SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
SWITCH, LTD.
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD. a Nevada limited liability company | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| vs. | (1) Failure to Comply with NRS 239.0107 and Request for Injunctive Relief |
| THE PUBLIC UTILITIES COMMISSION OF NEVADA, a Nevada Administrative Agency; The REGULATORY OPERATIONS STAFF OF THE PUBLIC UTILITY COMMISSION OF NEVADA a department within the PUCN; NEVADA POWER d/b/a NV Energy a Nevada Public Utility and Monopoly; ANTHONY SANCHEZ, Esq., an individual; ELIZABETH ELLIOT, ESQ., an individual; and CAROLYN "LINA" TANNER, ESQ., an individual; DOES  1 through 10; ROE ENTITIES 11 through 20, inclusive, | (2) Violation of Switch's right to Equal Protection under the Fourteenth Amendment |
| | (3) Violation of Switch's rights to Due Process under the Fourteenth Amendment |
| | (4) Unlawful State Government Action in Violation of the Commerce Clause |
| | (5) Tortious Interference with Contractual Relations |
| | (6) Intentional Interference with Prospective Economic Advantage |
| | (7) Deceptive Trade Practices under N.R.S. 598.0903, et seq. |
| Defendants. | (8)  Fraud |
| | (9)  Civil Conspiracy |
| | (10) Conspiracy to Commit Fraud |
| | (11) Negligence |
| | (12) Gross Negligence |
| | (13) Personal Liability pursuant to 42 U.S.C.S. § 1983 |
| | (14) Request for Declaratory Relief |
| | **PRAYER FOR RELIEF DEMAND FOR JURY TRIAL** |

SAMUEL CASTOR, ESQ.
*SWITCH, LTD.*
6795 Decatur Blvd.
Las Vegas, NV 89118
Telephone: (702) 333-6566

## COMPLAINT

**SWITCH, LTD.** (hereinafter referred to as "Plaintiff" or "Switch") hereby complains and alleges upon information and belief as follows:

### NATURE OF ACTION

This is an action for wanton, reckless and intentional actions and omissions giving rise to fraud and other unlawful and unconstitutional activities perpetrated by governmental agencies and employees trusted by the people of the State of Nevada; such acts and omissions being condoned and led by Carolyn "Lina" Tanner, Esq., the former General Counsel of the Public Utilities Commission ("TANNER"). The associated claims arising from TANNER's actions and the actions of others to be named, violated state and federal statutes, regulations, rules, and constitutions, give rise to personal liability under 42 U.S.C.S. 1983, and were done to unlawfully retain Switch as a customer of the monopoly NV Energy and impair renewable energy development in the State of Nevada, all while unlawfully enriching NV Energy. Plaintiff Switch seeks damages, attorneys' fees, costs, and preliminary injunctive relief.

### JURISDICTION

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§1331. This Court has supplemental jurisdiction over Plaintiff Switch's state law claims including against the state agencies, divisions and individuals named herein, pursuant to 28 U.S.C. § 1367(a).

2.      This Court has personal jurisdiction over Defendants based upon the following: (a) Defendants are resident in, provide government activity in, or operate licensed or regulated business in Nevada which activities serve or affect residents of the State of Nevada; and (b) Defendants committed acts or omissions that they knew or should have known would cause injury to Plaintiff Switch, in the State of Nevada.

3.      Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. § 1391(b) and (c). Venue lies in the unofficial Southern Division of this Court.

**PARTIES**

4.     Plaintiff Switch is a Nevada limited liability company organized and existing under the laws of the State of Nevada and doing business world-wide.

5.     Switch, led by its founder, CEO and inventor, Rob Roy, is known as the world's leading designer, builder and operator of the award winning SUPERNAP data centers, facilities designed to sustainably power, cool and protect the physical infrastructure and networks necessary to run the Internet.  A partial list of Switch's clients is available online at https://www.supernap.com/clients.html.

6.     Switch is informed and believes that Defendant **Carolyn "Lina" Tanner** (hereinafter "Defendant" or "TANNER") was, and is, a resident of Washoe County Nevada, mostly recently employed as the General Counsel for the PUCN and that TANNER's Nevada Bar number is 5520.

7.     Switch is informed and believes that TANNER served as the PUCN's General Counsel for over three (3) years, where her duties included ensuring the propriety and legality of PUCN activities and proceedings until she promptly resigned on June 16, 2016; one day following complaint at a public PUCN hearing of her veiled use of social media to discuss dockets pending before the PUCN.  See a copy of the publicly filed complaint and examples of some of the social media statements previously publicly provided to the PUCN attached hereto as **Exhibit 1**.

8.     Switch is informed and believes TANNER has been subject to other complaints including complaints filed on June 9, 2014, alleging that TANNER violated Nevada's open meeting laws by tampering with evidence[1] as well as impairing and obfuscating public testimony critical of the PUCN.[2]

9.     Switch is informed and believes that Defendant **Tony F. Sanchez, III** (hereinafter "Defendant" or "SANCHEZ") was, and is, a resident of Clark County Nevada

---

[1] Available at: http://pucwatchdogs.com/2ndagcomplaint.pdf

[2] Available at: http://www.thevegasvoice.net/politics--opinions/-faux-transparency-and-hidden-unwanted-public-participation

and is currently employed as the Senior Vice President of Government and Community Strategy for NV Energy and was formerly employed as the Assistant General Counsel at the PUCN. SANCHEZ's Nevada Bar Number is 5478.

10.    Switch is informed and believes that Defendant **Elizabeth Elliot** (hereinafter "Defendant" or "ELLIOT") was, and is, a resident of Clark County Nevada and is currently employed as the Associate General Counsel for NV Energy. ELLIOT's Nevada Bar Number is 205.

11.    Switch is informed and believes that as the senior regulatory attorney for NVE, ELLIOT led or coordinated NVE's activities in the Switch 704B Docket.

12.    Switch is informed and believes that Defendant **Nevada Power Company** (dba NV Energy) (hereinafter "Defendant" or "NVE") was and is a Nevada Corporation doing business in Clark County Nevada. See print out of the Nevada Secretary of State website attached hereto as **Exhibit 2**.

13.    Switch is informed and believes that the **Public Utilities Commission of Nevada** (hereinafter "Defendant" or "PUCN") was, and is, the administrative body of the state of Nevada governed by Nev. Rev. Stat. 703 among other statutes, rules and regulations, tasked with regulating electric monopolies in the State of Nevada.

14.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants herein designated as DOES 1 through 10 and ROE ENTITIES 11 through 20, are unknown to Switch at this time, who therefore sues said Defendants by such fictitious names. More particularly, Switch is informed and believes that such Defendants are otherwise responsible, personally and collectively, for the damages to Switch complained of herein. Switch will respectfully seek leave of the Court to amend this Complaint to allege the true names of said Defendants as they are ascertained and the right to include any associated claims that arise from such discovery.

## ALLEGATIONS COMMON TO ALL COUNTS

1.   In 2001, the Nevada Legislature enacted Nev. Rev. Stat. 704B to allow customers annually consuming over one (1) megawatt of power to unbundle from the electric monopoly in the State of Nevada.

2.   In or around 2003, Barrick Gold U.S. Inc., filed an application to depart the electric monopoly, NVE pursuant to Nev. Rev. Stat. 704B.  Barrick's 704B application was approved and allowed to depart the electric monopoly NVE by the PUCN.

3.   At least as early as 2011, Switch began seeking renewable energy options from NVE but Switch's requests were ignored as will be proven in discovery and at trial.  As such, Switch began exploring alternative 100% green energy options, including access to interstate commerce under Nev. Rev. Stat. 704B.

4.   On November 7th, 2014, Switch filed its application to unbundle from the electric monopoly, NVE, and obtain direct access to the national electric grid pursuant to Nev. Rev. Statute 704B so that Switch could obtain 100% renewable power for its data center facilities (the "Switch 704B Docket")[3].

5.   Switch made regular public statements including statements under oath during the Switch 704B Docket that it intended to unbundle from the electric utility NVE because of NVE's lack of interest in providing Switch with 100% renewable power. See Expert Witness Testimony of Adam Kramer, attached herewith as **Exhibits 3.1 and 3.2**.  Switch had been trying for several years to obtain 100% renewable power and regularly reported that sustainability was central to its current and future business policies.  See id.

6.   At that time, Switch also began negotiating with several renewable energy providers – including nationally recognized photovoltaic solar provider First Solar Electric, LLC, (aka First Solar, Inc.) – to build a new solar facility in Nevada.  Switch planned to secure the resources necessary to ensure that when Switch unbundled from NVE, Switch could be 100%

---

[3] PUCN Docket No. 14-11007

green via renewable power contracts with First Solar (the "First Solar Contracts") and other providers.  See id.

7.  Given the mission critical nature of Switch's services, and the need to ensure utmost physical security of Switch's physical infrastructure, Switch, PUCN Staff, and NVE executed various Protective Agreements.

8.  On or around May 8, 2015, after the Switch 704B Docket had already commenced, Las Vegas Sands Corp.[4] and Wynn Las Vegas, LLC[5] filed their own applications to unbundle from NVE pursuant to NRS 704B.

9.  On or around May 12, 2015, MGM Resorts International[6] filed an application to unbundle from NVE pursuant to NRS 704B.

10. On or about June 10, 2015 the PUCN issued an order declaring that Switch was not permitted to unbundle because inter alia, "[a]t a minimum, Switch's departure must be followed by a Switch-like customer" to hold other NVE customers harmless.[7]

11. The Las Vegas Sun in reaction to the Switch 704B Docket published a cartoon depicting Switch in chains unable to escape a prison with the word "NV Energy" scrawled on the prison door.  See a copy of the cartoon attached herewith as **Exhibit 4.**

12. Alarmed by the procedural process in the Switch 704B Docket, surprised by the decision to prevent Switch from unbundling in the Denial Order, and suspecting unlawful or collusive behavior, Switch filed litigation hold letters with the PUCN, the PUCN Regulatory Operations Staff, NVE, R&R Partners, the BCP, on June 12, 2015.  See a copy of the litigation hold letter attached herewith as **Exhibit 5**.

13. Defendant TANNER responded to Switch's letter on June 22, 2015, largely denying any duty to comply with the litigation hold request for the PUCN and ignoring Switch's request.  See a copy of the response letter attached herewith as **Exhibit 6**.

---

[4] PUCN Docket No. 15-05002

[5] PUCN Docket No. 15-05006

[6] PUCN Docket No. 15-05017

[7] PUCN Order Docket No. 14-11007 ¶ 105

14. Switch then filed a Petition for Reconsideration on June 25, 2015, seeking review of the Denial Order and outlining the unlawful and inappropriate substantive and procedural steps taken and conclusions reached by the PUCN in the Switch 704B Docket and Denial Order.  Former Commissioner Wagner, one of the three PUCN commissioners sitting over the Denial Order, dissented indicating she believed that Switch should be given the ability to unbundle.  Specifically, she stated she thought the Denial Order "inherently unfair" and "fundamentally unfair for all of the parties that went through this, whether they supported it or not, to not have some kind of outcome"; and that she felt the Denial Order was "changing the rules midstream…".  An audio recording of the Switch 704B Docket Hearing issuing the Denial Order is available on the PUCN website and will be provided.

15. Despite Switch's strong belief in the unlawful and unjust nature of the Denial Order and the Switch 704B Docket, Switch remained desirous to secure 100% renewable energy and to do so prior to the quickly approaching termination of Switch's ability to enter into the First Solar Contracts due to the pending expiration of a federal investment tax credit required by First Solar.  As such, Switch had no choice but to pay a premium for the resource, permit NVE to interject itself as a middle man in the First Solar Contracts and entered into a settlement agreement with NVE and the PUCN on July 30, 2015 (the "Settlement Agreement").  <u>See</u> a copy of the final PUCN Order granting the Stipulation and the associated Settlement Agreement attached herewith as **Exhibit 7**.

16. The Settlement Agreement provided Switch with the renewable energy credits from the First Solar Contracts, but at a higher cost and with NVE as an injected middle party.  Specifically, the PUCN and NVE required Switch to pay a Nevada Green Rider "premium" above its then current electric rates to obtain the renewable benefit of the First Solar Contracts.  The First Solar Contracts signed by NVE were praised as the lowest priced photo-voltaic solar solution in the United States, if not the world for the year 2015[8]; and well below Switch's then current costs with NVE, as will be proved.  However, Switch was required to

---

[8] https://www.nvenergy.com/company/mediaroom/newsdetail.cfm?n=136919

pay a premium above their normal retail rate to claim association with their First Solar Contracts.  Thereby enriching NVE who was paying approximately 3.8 cents a KWH while charging Switch approximately 9 cents a KWH.

17. In good faith reliance and recognizing Switch was being given no other way to obtain 100% renewable power, or execute on the First Solar Contracts, Switch signed the Settlement Agreement with NVE and the PUCN on November 30, 2015 and stayed its Petition for Reconsideration.

18. Switch spent approximately $1,000,000.00 pursuing the Switch 704B Docket, as will be evidenced by subsequent records via discovery.

19. On or around January 13, 2016, the PUCN issued final orders authorizing the Sands, Wynn, and MGM the authority to unbundle from the electric utility and utilize interstate direct access for their energy needs.  Unlike the Denial Order, which fully barred Switch from unbundling, the Sands, Wynn, and MGM were permitted to unbundle without being replaced by a like customer.

20. Switch understands that since January 2016, the hotel properties known as the Peppermill, El Dorado and the Grand Sierra operating in Northern Nevada have all expressed intent to unbundle from NVE under NRS 704B

21. Switch understands that to date, Switch is the only entity the PUCN has expressly denied the ability to unbundle under Nev. Rev. Stat. 704B.

22. On or around June 15, 2016, Switch became aware that TANNER had used the false name "DixieRaeSparx", "#DixieRaeSparx" or "@DixieRaeSparx" (each referred to herein as the "Handle") to publicly discuss the Switch 704B Docket and other PUCN proceedings during the pendency of those dockets.  TANNER has since deleted or hidden the contents of the social media accounts.

23. Switch understands TANNER also maintained a blog (www.dixireasparx.com) on WordPress, as well as accounts using variations of the Handle on Twitter, Pinterest, Etsy, SoundCloud, Instagram, and other platforms. See screen shots of various accounts using the

Handle attached herewith as **Exhibits 8.1-8.4**.  Again, TANNER has attempted to delete or hide the contents of these accounts.

24. Switch has confirmed that TANNER made comments under the Handle to online publications about PUCN dockets including VegasInc.  See id., at **Exhibit 9**.  The comments, tweets, postings and contents of the blog were deleted after TANNER's sudden resignation from her position as General Counsel to the PUCN.  Id.

25. Switch understands that TANNER also maintains a public Facebook account under her proper name "Carolyn 'Lina' Tanner", where she has used the Handle enabling the public to associate herself with the Handle.  See a copy of various postings and screen shots of TANNER's Facebook page, some of TANNER's posts and friends are attached herewith as **Exhibit 10.1-10.4**.

26. At the time of this filing, the depth of TANNER's social media activity is unknown, because the entries have been deleted or made private.  Even so, Switch has found evidence in the "snippets" captured or cached by Google's search engine, available when searching "DixieRaeSparx Switch" that TANNER discussed Switch under her Handle.  See **Exhibit 11.1-11.5**.

27. Switch is further informed that TANNER evidenced a bias against solar by publicly defending the PUCN, and NVE, when criticized by other commenters, including during the pendency of the Switch 704B Docket.

28. Switch understands that other commenters publicly communicating with TANNER cloaked as "DixieRaeSparx" concluded that she worked for NVE or the PUCN due to her defense of both with her comments.  See a copy of a VegasInc. article containing responses to TANNER's comments using the Handle, attached herewith as **Exhibit 9**.

29. Switch understands that after TANNER resigned, she reported that the PUCN knew of her use of the Handle "DixieRaeSparx" and that the PUCN Chairman followed TANNER on Twitter. See a copy of a news articles quoting from TANNER is attached herewith as **Exhibit 12.1 to Exhibit 12.3**.

30. Upon discovery of TANNER's activity, Switch filed a second litigation hold letter through outside counsel, Greenberg Traurig, on June 24, 2016.  A copy of the second litigation hold letter is attached herewith as **Exhibit 13**.

31. Thereafter, Switch submitted a Nevada Open Records Act request to the PUCN on June 28, 2016 and again on July 1, 2016, pursuant to NRS 239.0107; requesting information related to this Complaint.  A copy of these requests is attached herewith as **Exhibit 15**, and **Exhibit 16**.  Switch has yet to receive any documents from the PUCN.

## FIRST CAUSE OF ACTION

### (Failure to Comply with NRS 239.0107 and Request for Injunctive Relief)

1. Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2. The PUCN failed to comply with NRS 239.0107 because the PUCN has yet to identify a date by which Switch will obtain the records requested pursuant to NRS 239.0107.

3. While Switch will continue to work with the PUCN to obtain the requested records, Switch asks the Court's assistance in ensuring Switch obtains all relevant records, particularly communications between the Commission and parties, and any documents or postings created by TANNER with the Handle.

4. TANNER deactivated her Twitter account, attempting to destroy evidence and putting the evidence at jeopardy shortly after her unlawful acts were exposed on June 15, 2016.

5. Twitter's deactivation policy is such that unless a request for Twitter records is made by law enforcement or a court, all records of a deactivated account will be permanently deleted thirty (30) days from deactivation (here around June 15, 2016); see **Exhibit 16**. Twitter's policy also states that a user who has attempted to deactivate an account, can reactivate an account simply by logging into the account within the thirty (30) day post-deactivation window.

6. Therefore, as requested below, Switch requests injunctive relief in the form of a Court Order requiring TANNER to log into and reactivate her account, immediately, so that all

evidence will be preserved and so that she can provide a complete copy of the material to Switch.

7.  Switch also requests injunctive relief in the form of a Court Order, ordering all social media platforms, and especially Twitter, to retain all tweets, comments, messages, videos, and any content created by TANNER with her Handle, and deliver all such material to Switch.

8.  Switch further requests that the Court Order all Defendants, but particularly TANNER, SANCHEZ, and ELLIOT to preserve all evidence, including communications, calendar meetings, and any record of contact or interaction including via social media use to ensure no further evidence is threatened during the pendency of this litigation.

9.  TANNER has already attempted to destroy evidence. Switch has already been harmed, and the likelihood of immediate harm is demonstrably high.  Absent injunctive relief, material evidence *will* be destroyed, further complicating this matter allowing TANNER to destroy evidence of unlawful conduct.

10. It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

## SECOND CAUSE OF ACTION

### (Violation of Switch's Right to Equal Protection under the Fourteenth Amendment)

1.  Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2.  The Fourteenth Amendment of the United States Constitution ensures equal protection to all citizens under the United States.

3.  Switch has a constitutional right to equal protection when before a Nevada Administrative panel such as the PUCN.

4.  NRS 704B is a statute in full force and effect in Nevada and provides electric utility customers who meet certain requirements the ability to unbundle from the public electric utility and access the national market.  To date, four (4) other entities have been authorized

by the PUCN to unbundle from NVE; three (3) in the last six (6) months.  Switch is the only entity to be explicitly denied the right to unbundle after completing a contested case before the PUCN.

5.  NRS 703.301 is a statute in full force and effect in Nevada and prohibits *ex parte* communication between the PUCN and the parties (including the PUCN Regulatory Operations Staff) in a contested case such as the Switch 704B Docket.

6.  Rules 2.9, 2.10 and 3.4 (among others) of the Revised Nevada Judicial Code of Conduct are in full force and effect in Nevada and bind PUCN employees and officers; preventing *ex parte* communications with NVE, and PUCN Regulatory Operations Staff or public discussion of a pending docket;

7.  TANNER, the PUCN, PUCN Regulatory Operations Staff and other government actors knew or should have known that their failure to implement certain policies and procedures would result in a miscarriage of justice and deprive Switch of its constitutional and statutory rights and protections.

8.  The PUCN, PUCN Regulatory Operations Staff and other government actors, including the Chairman of the PUCN who was following TANNER on Twitter and had knowledge of her actions, knew or should have known that TANNER was engaging in inappropriate activity, and abusing her role as General Counsel, and failed to enforce rules, guidelines, policies or procedures that would protect Switch against a miscarriage of justice and secure Switch's constitutional and statutory rights and protections.

9.  The PUCN, PUCN Regulatory Operations Staff, TANNER and other government actors yet to be named, violated Switch's constitutional and statutory right to equal protection as guaranteed by the Fourteenth Amendment by:

   a.    Discriminating against and singling out Switch as the only 704B applicant to be denied the ability to unbundle, while simultaneously permitting four (4) other 704B applicants to unbundle under NRS 704B (i.e. Barrick Gold U.S. Inc., Las Vegas Sands Corp., Wynn Las Vegas, LLC, and MGM Resorts International (collectively the "704B Entities"));

b.      Engaging in *ex parte* communications during the pendency of the Switch 704B Docket including directly or indirectly communicating via postings created with TANNER's Handle; or

c.      Publicly commenting on the NRS 704B Docket with the intent to influence public opinion regarding the docket using TANNER's Handle, during the pendency of the Switch 704B Docket.

d.      Intentionally disobeying rules prohibiting *ex parte* communications in violation of Rule 3.4 and Rule 3.5 of the Nevada Rules of Professional Conduct.

e.      In failing to disclose the unlawful conduct of TANNER and attempting to destroy evidence of such unlawful conduct, in violation of Rule 3.4 of the Nevada Rules of Professional Conduct.

10. As a result of the Defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch 704B Docket), suffered monetary damages in excess of $30,000,000.00, has been required to pay NVE increased costs for renewable energy and has been deprived of its statutory and constitutional rights, including Switch's rights to access interstate commerce.

11. It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

**THIRD CAUSE OF ACTION**

**(Violation of Switch's rights to Due Process under the Fourteenth Amendment)**

1.   Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2.   NRS 704B is a statute in full force and effect in Nevada and provides utility customers who meet certain requirements the ability to unbundle from the public utility, NVE, and access the national market.

3.   NRS 703.301 is a statute in full force and effect in Nevada and prohibits any explicit

or implicit *ex parte* communication between the PUCN Commissioners (including TANNER and the rest of the Commissioners' staff) and any other party (including the PUCN Regulatory Operations Staff) during a contested case such as the Switch 704B Docket.

4.   Defendants and other government actors yet to be named, violated Switch's constitutional and statutory right to due process in the Switch 704B Docket by engaging in *ex parte* communications prohibited by NRS 703.301 during the pendency of the docket; including via TANNER's Handle.

5.   The PUCN violated Switch's constitutional and statutory right to due process in the Switch 704B Docket by permitting TANNER to use the Handle to publicly discuss the Switch 704B Docket during the pendency of the same.  TANNER publicly commented that the PUCN Chairman knew of her use of the Handle.  See **Exhibit 12.1** and **Exhibit 12.3**.

6.   Rules 2.9 and 2.10 of the Revised Nevada Judicial Code of Conduct are in full force and effect in Nevada and bind PUCN employees and officers; preventing ex parte communications with NVE, and PUCN Regulatory Operations Staff or public discussion of a pending docket;

7.   TANNER, the PUCN, PUCN Regulatory Operations Staff, and other government actors knew or should have known that their failure to implement certain policies and procedures would result in a miscarriage of justice and deprive Switch of its constitutional and statutory rights and protections.

8.   Yet, TANNER, the PUCN, and PUCN Regulatory Operations Staff other government actors yet to be named, violated Switch's constitutional and statutory right to due process as guaranteed by the Fourteenth Amendment by:

a.   Engaging in *ex parte* communications during the pendency of the Switch 704B Docket including directly or indirectly communicating via postings created with TANNER's Handle;

b.   Publicly commenting on the NRS 704B Docket with the intent to influence public opinion regarding the docket using TANNER's Handle, during the pendency of the Switch 704B Docket;

c.  Intentionally disobeying rules prohibiting *ex parte* communications in violation of Rule 3.4 and Rule 3.5 of the Nevada Rules of Professional Conduct; and/or

d.  In failing to disclose the unlawful conduct of TANNER and attempting to destroy evidence of such unlawful conduct, in violation of Rule 3.4 of the Nevada Rules of Professional Conduct.

9.  As a result of the Defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch 704B Docket), suffered monetary damages in excess of $30,000,000.00, has been required to pay NVE increased costs for renewable energy and has been deprived of its statutory and constitutional rights, including Switch's rights to access interstate commerce.

10. It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

### FOURTH CAUSE OF ACTION

### (Unlawful State Government Action in Violation of the Commerce Clause)

1.  Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2.  TANNER, the PUCN, the PUCN Regulatory Operations Staff and other government actors yet to be named, violated Switch's constitutional and statutory right to unbundle from NVE and engage in interstate commerce when:

a.  TANNER, the PUCN, PUCN Regulatory Operations Staff and other government actors yet to be named, exceeded and abused their governmental powers by improperly and intentionally preventing Switch from engaging in interstate commerce despite state and federal laws permitting Switch to do so and in doing so, violated the Commerce Clause of the United States Constitution and violated the Dormant Commerce Clause of the United States by:

      i.    Discriminating against and singling out Switch as the only 704B applicant to be denied the ability to unbundle, while having permitted four (4) other 704B applicants to unbundle under NRS 704B;

      ii.    Engaging in *ex parte* communications during the pendency of the Switch 704B Docket including directly or indirectly communicating via postings created with TANNER's Handle;

      iii.    Publicly commenting on the NRS 704B Docket with the intent to influence public opinion regarding the docket using TANNER's Handle, during the pendency of the Switch 704B Docket;

      iv.    Intentionally disobeying rules prohibiting *ex parte* communications in violation of Rule 3.4 and Rule 3.5 of the Nevada Rules of Professional Conduct; and/or

      v.    In failing to disclose the unlawful conduct of TANNER and attempting to destroy evidence of such unlawful conduct, in violation of Rule 3.4 of the Nevada Rules of Professional Conduct.

b.    TANNER, the PUCN, PUCN Regulatory Operations Staff and other government actors yet to be named, intentionally or negligently misconstrued Nevada law to prevent Switch from engaging in interstate Commerce.

3.   As a result of the Defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch 704B Docket), suffered monetary damages in excess of $30,000,000.00, has been required to pay NVE increased costs for renewable energy and has been deprived of its statutory and constitutional rights, including Switch's rights to access interstate commerce.

4.   It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

/ / /

**FIFTH CAUSE OF ACTION**

**(Tortious Interference with Contractual Relations)**

1.  Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2.  As afore pled, Switch was pursuing the First Solar Contracts during the pendency of the Switch 704B Docket.

3.  TANNER, SANCHEZ, and/or ELLIOT intentionally abused their roles as attorneys, and knew or should have known TANNER was abusing her role as General Counsel of the PUCN to influence the PUCN and PUCN Staff and affect the Switch 704B Docket procedural process, such that the PUCN issued a Denial Order; interfering with Switch's ability to execute the First Solar Contracts.  Such actions were taken by TANNER either intentionally or in wanton disregard of TANNER's knowledge that she was tortiously interfering with Switch's contractual relations.

4.  These actions permitted NVE to enter into the First Solar Contracts for NVE's own gain and charge Switch a premium for renewable energy Switch would have otherwise obtained directly for less, without NVE as the injected middle man.

5.  As a result of the Defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch 704B Docket), suffered monetary damages in excess of $30,000,000.00, has been required to pay NVE inflated costs for renewable energy.

6.  It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

**SIXTH CAUSE OF ACTION**

**(Intentional Interference with Prospective Economic Advantage)**

1.     Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2.     Upon information and belief, at the time Switch was negotiating with First

Solar for the First Solar Contracts, Defendant NVE was also negotiating with First Solar for the First Solar Contracts.

3.      Upon information and belief, Defendant committed acts intended or designed to disrupt Switch's prospective economic advantage inherit in directly contracting with First Solar for the First Solar Contracts.

4.      As a direct and proximate result of Defendants' intentional interference with Switch's prospective economic advantage, Switch has expended over $1,000,000.00 to obtain renewable energy in a biased and partial process (the Switch 704B Docket), suffered, and will continue to suffer irreparable injury and monetary damages in excess of $30,000,000.00, been required to pay NVE increased costs for renewable energy, and has been deprived of its statutory and constitutional rights.

5.      It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

## SEVENTH CAUSE OF ACTION

### (Deceptive Trade Practices Under N.R.S. § 598.0915)

1.      Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2.      Upon information and belief, in the course of conducting their business, Defendant NVE knew or should have known it made false representations and/or omitted material information regarding the PUCN, PUCN Regulatory Operations Staff, and TANNER's use of the Handle to increase the likelihood of Switch signing the Settlement Agreement and relinquishing its rights to unbundle.

3.      As the direct and proximate result of Defendants' conduct, Switch suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.  Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch

704B Docket), suffered monetary damages in excess of $30,000,000.00 and has been required to pay NVE deceptive costs for renewable energy.

4.      It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

**EIGHTH CAUSE OF ACTION**

**(Fraud)**

1.      Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2.      Defendants knew or should have known that the Switch 704B Docket was not properly handled with impartiality and that Switch had been and was being denied due process, equal protection and access to interstate commerce.

3.      Defendants knew or should have known TANNER was violating her quasi-judicial obligations of impartiality imposed by Nevada Rules, Nevada Revised Statutes, the Nevada Constitution and the United States Constitution.

4.      Specifically, Defendants knew or should have known that TANNER, the very individual tasked with protecting the due process and legality of the Switch 704B Docket as General Counsel to the PUCN, was impairing the process by engaging in *ex parte* communications, either directly or indirectly, in violation of NRS 703.373, with ELLIOT, SANCHEZ, NVE, and PUCN Regulatory Operations Staff; or,

5.      Specifically, Defendants knew or should have known that TANNER, the very individual tasked with protecting the due process and legality of the Switch 704B Docket and maintaining appropriate decorum and impartiality of PUCN process, violated Rules 2.9 and 2.10 of the Revised Nevada Judicial Code of Conduct by discussing a pending docket publicly, and engaging in *ex parte* discussions with ELLIOT, SANCHEZ, NVE, and PUCN Regulatory Operations Staff;

6.      Specifically, TANNER knew or should have known that she was violating Rule 3.5 of the Nevada Rules of Professional Conduct by seeking to influence a proceeding

by means prohibited by law (including but not limited to NRS 703.301 prohibiting *ex parte* communications) by posting tweets on Twitter and communicating on other social media platforms viewable by ELLIOT, SANCHEZ, NVE, and PUCN Regulatory Operations Staff and outlets regarding the Switch 704B Docket, during the pendency of the docket.

7.     TANNER knew or should have known that she was violating Rule 3.6 of the Nevada Rules of Professional Conduct by seeking to influence a proceeding with publicity by posting comments on social media regarding the Switch 704B Docket, during the pendency of the docket.

8.     Despite Defendants' knowledge of the foregoing unlawful facts, Defendants intentionally withheld this information and intentionally misrepresented to Switch that the Switch 704B Docket and the Denial Order were impartial and proper.

9.     Despite Defendants' knowledge of the foregoing facts, Defendants intentionally withheld facts about TANNER's actions, knowing that sharing such facts with Switch would have stopped Switch from agreeing to the Settlement Agreement.

10.     Despite Defendants' knowledge of the foregoing facts, Defendants maintained that the Denial Order was lawful, and that the process was legal, thereby intentionally misrepresenting circumstances surrounding the Settlement Agreement and the Denial Order.

11.     Throughout the process, Defendant TANNER as General Counsel, ELLIOT, and SANCHEZ, as attorneys, along with counsel for the Regulatory Operations Staff, and NVE had a duty to disclose the partiality of the process under Rule 3.4 of the Rules of Professional Conduct and had several opportunities to correct the omissions and misrepresentations; yet Defendants failed to do so.

12.     Instead, Defendants intentionally perpetrated these omissions and misrepresentations so that NVE could interfere with Switch's ability to contract with First Solar; so NVE could take the First Solar Contracts for itself; thereby enabling NVE to sign the First Solar Contracts and realize the economic benefit of forcefully interjecting itself on some of the most economically priced renewable power contracts for 2015 in the United States, if not the world; all while keeping Switch as a customer and charging Switch a

premium and further enriching NVE.

13.    Defendants knew that Switch would reasonably rely upon the intentional omissions and misrepresentations referenced above, view the Settlement Agreement as the only option and sign the Settlement Agreement because of Switch's publicly declared desire to obtain 100% renewable energy as promptly as possible.

14.    Switch reasonably relied on Defendants' misrepresentations and omissions by signing the Settlement Agreement, thereby foregoing rights to pursue other remedies.

15.    Switch was damaged by its reasonable reliance because Switch agreed to pay NVE a premium for the renewable power it would have otherwise obtained directly from First Solar, resulting in millions of dollars in increased costs to Switch and depriving Switch of its ability to unbundle from NVE and engage in interstate commerce.

16.    As a result of the Defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch 704B Docket), suffered monetary damages in excess of $30,000,000.00, has been required to pay NVE increased costs for renewable energy and has been deprived of its statutory and constitutional rights, including Switch's rights to access interstate commerce and is entitled to punitive and/or exemplary damages as this Court sees fit, including under NRS § 42.005.

17.    It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

**NINTH CAUSE OF ACTION**

**(Civil Conspiracy)**

1.  Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2.  TANNER, SANCHEZ and/or ELLIOT agreed either explicitly or tacitly to act in concert to unlawfully influence the Switch 704B Docket including using TANNER's Handle to influence the Switch 704B Docket, to engage in *ex parte* communications, and to affect

public opinion, with the common goal to keep Switch as a bundled customer of NVE, to prevent Switch from accessing the interstate market, and to prevent Switch from executing the First Solar Contracts.

3.   Defendants knew that injury to Switch was likely because it would deprive Switch of its rights, remedies and economic advantages associated with unbundling, allowing Switch to gain direct access to the interstate energy market, and direct access to the First Solar Contracts.

4.   As a result, NVE was able to force Switch to remain a customer, execute the First Solar Contracts and take advantage of some of the most economical renewable energy in the United States, if not the world, and charge Switch a premium for such electricity.

5.   TANNER commented about official government hearings on Facebook and posted inappropriate material online during such hearings.   See a copy of TANNER's communications on Facebook during a government hearing attached herewith as **Exhibit 10.4**.

6.   Defendants TANNER and SANCHEZ are friends on Facebook and have used that social media platform to communicate.   See a copy of TANNER's Facebook friends attached herewith as **Exhibit 10.3**.   TANNER communicated with other government officials via social media including during government hearings.   Because SANCHEZ was friends with TANNER on Facebook, and because of TANNER's conduct, SANCHEZ knew or should have known of TANNER's unlawful and inappropriate use of the Handle.

7.   As counsel for NV Energy actively working on the Switch 704B Docket, ELLIOT knew or should have known about TANNER's unlawful and inappropriate use of the Handle.

8.   Defendants TANNER, SANCHEZ, and/or ELLIOT violated their heightened duty of care as licensed attorneys and officers of the Court by engaging in such unlawful communications and activities and using such activities to conspire.

9.   TANNER violated her judicial or quasi-judicial duties as General Counsel by engaging in such unlawful activities.

10. Working in concert or in combination, the Defendants did damage Switch by using

TANNER's Handle and/or by engaging in *ex parte* communications in person and/or on social media platforms to conspire to and to impair the Switch 704B Docket, deprive Switch of its rights, remedies and economic advantages associated with the NRS 704B Docket and prevent Switch from unbundling from NVE.

11. As a result of the Defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch 704B Docket), suffered monetary damages in excess of $30,000,000.00, has been required to pay NVE increased costs for renewable energy and has been deprived of its statutory and constitutional rights, including Switch's rights to access interstate commerce and is entitled to punitive and/or exemplary damages as the Court sees fit, including under NRS § 42.005.

12. It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

**TENTH CAUSE OF ACTION**

**(Conspiracy to Commit Fraud)**

1. Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein, specifically including the facts pled in the First Cause of Action for Fraud.

2. Defendants TANNER, SANCHEZ, and/or ELLIOT agreed either explicitly or tacitly to act in concert to unlawfully defraud Switch to execute the Settlement Agreement, forego its procedural rights and remedies, and direct access to the national energy market and the First Solar Contracts.

3. As a result, NVE was able to keep Switch as a customer and the profits associated therewith, execute the First Solar Contracts and the resulting savings, and charge Switch a premium for the same power Switch would have otherwise obtained if it had been permitted to unbundle.

4. TANNER commented about official government hearings on Facebook, and posted inappropriate material online during such hearings.   See a copy of TANNER's

communications on Facebook during a government hearing attached herewith as **Exhibit 10.4**.

5. Defendants TANNER and SANCHEZ are friends on Facebook and have used that social media platform to communicate. <u>See</u> a copy of TANNER's Facebook friends attached herewith as **Exhibit 10.3**. Because SANCHEZ was friends with TANNER on Facebook, SANCHEZ knew or should have known of TANNER's unlawful and inappropriate use of the Handle.

6. As counsel for NV Energy actively working on the Switch 704B Docket, ELLIOT knew or should have known about TANNER's unlawful and inappropriate use of the Handle.

7. Defendants TANNER, SANCHEZ, and/or ELLIOT violated their heightened duty of care as licensed attorneys and officers of the court, by engaging in such unlawful activities and using such activities to conspire.

8. TANNER violated her judicial or quasi-judicial duties as General Counsel by engaging in such unlawful activities.

9. Working in concert or in combination, the Defendants did damage Switch by engaging in *ex parte* communications, or using the Handle to defraud Switch, all to deprive Switch of its rights, remedies and economic advantages associated with the NRS 704B Docket and the First Solar Contracts and unlawfully keep Switch as an NVE customer.

10. As a result of the Defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch 704B Docket), suffered monetary damages in excess of $30,000,000.00, has been required to pay NVE increased costs for renewable energy and has been deprived of its statutory and constitutional rights, including Switch's rights to access interstate commerce and is entitled to punitive and/or exemplary damages as the Court sees fit, including under NRS § 42.005.

11. It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

## ELEVENTH CAUSE OF ACTION

### (Negligence)

1.  Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2.  Defendants the PUCN, PUCN Regulatory Staff, TANNER, SANCHEZ, and/or ELLIOT were negligent in their handling of the Switch 704B Docket.

3.  Defendants had a duty to Switch to inform Switch of TANNER's conduct.

4.  Defendants knew or should have known of TANNER's inappropriate and unlawful conduct.

5.  Defendants wantonly disregarded the potential damage to Switch arising from TANNER's conduct to Switch.

6.  Defendants TANNER, PUCN, and the PUCN Regulatory Operations Staff were grossly negligent in the exercise of their administrative and legal duties toward Switch including but not limited by failing to inform Switch of TANNER's unlawful activities, and *ex parte* communications.

7.  Defendants TANNER, SANCHEZ, and ELLIOT had a heightened duty of care as licensed attorneys and officers of the court and as such had a duty to disclose the partiality of the process under Rule 3.4 of the Rules of Professional Conduct and had several opportunities to correct the omissions and misrepresentations; yet Defendants failed to do so.

8.  TANNER had a duty to disclose to Switch her conflict, her bias against solar and her inability to act in a quasi-judicial, or judicial manner; and TANNER had a duty to recuse herself from any interaction with the Switch 704B Docket. TANNER failed to do so.

9.  Defendants TANNER, PUCN, and the PUCN Regulatory Operations Staff were grossly negligent in the exercise of their administrative and legal duties toward Switch by failing to implement and/or enforce policies, procedures, and rules preventing unlawful communications including *ex parte* communications; and procedures regarding the disclosure and response to such violations.

10. As a result, Switch was damaged, deprived of its constitutional rights, deprived of its rights, remedies and economic advantages associated with the NRS 704B Docket and the First Solar Contracts, prevented from engaging in interstate commerce, and unlawfully detained as an NVE customer.

11. As a result of the Defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch 704B Docket), suffered monetary damages in excess of $30,000,000.00, has been required to pay NVE increased costs for renewable energy and has been deprived of its statutory and constitutional rights, including Switch's rights to access interstate commerce.

12. It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

## TWELFTH CAUSE OF ACTION

### (Gross Negligence)

1. Plaintiff Switch incorporates the allegations in the preceding paragraphs as if fully set forth herein.

2. Defendants the PUCN, PUCN Regulatory Staff, TANNER, SANCHEZ, and/or ELLIOT were grossly negligent in their handling of the Switch 704B Docket.

3. Defendants had duty and a heightened duty to Switch to inform Switch of TANNER's conduct.

4. Defendants knew or should have known of TANNER's inappropriate and unlawful conduct.

5. Defendants wantonly disregarded the potential damage to Switch arising from TANNER's conduct to Switch and failed to protect Switch from the unlawful and inappropriate actions of TANNER.

6. Defendants TANNER, PUCN, and the PUCN Regulatory Operations Staff were grossly negligent in the exercise of their administrative and legal duties toward Switch

including but not limited by failing to inform Switch of TANNER's unlawful activities, and *ex parte* communications.

7.   Defendants TANNER, PUCN, and the PUCN Regulatory Operations Staff, were grossly negligent in the exercise of their administrative and legal duties toward Switch by failing to implement and/or enforce policies, procedures, and rules preventing unlawful communications including *ex parte* communications and procedures regarding the disclosure and response to such violations.

8.   Defendants TANNER, SANCHEZ, and ELLIOT had a heightened duty of care as licensed attorneys and officers of the court *and* had a duty to disclose the partiality of the process under Rule 3.4 of the Rules of Professional Conduct and had several opportunities to correct the omissions and misrepresentations; yet DEFENDANTS failed to do so.

9.   TANNER had a duty to disclose to Switch her conflict, her bias against solar, and her inability to act in a quasi-judicial, or judicial manner, and TANNER had a duty to recuse herself from any interaction with the Switch 704B Docket; TANNER failed to do so.

10.   As a result, Switch was damaged, deprived of its constitutional rights, deprived of its statutory rights, remedies and economic advantages associated with the NRS 704B Docket and the First Solar Contracts, prevented from engaging in interstate commerce, and unlawfully detained as an NVE customer.

11. As a result of the Defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch 704B Docket), suffered monetary damages in excess of $30,000,000.00, has been required to pay NVE increased costs for renewable energy and has been deprived of its statutory and constitutional rights, including Switch's rights to access interstate commerce and is entitled to punitive and/or exemplary damages as this Court sees fit, including under NRS § 42.005.

12. It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

1

2

**THIRTEENTH CAUSE OF ACTION**

3

**(Personal Liability pursuant to 42 U.S.C.S. § 1983)**

4

1.  Plaintiff Switch incorporates the allegations in the preceding paragraphs as if herein.

5

6

2.  TANNER, PUCN staff, PUCN Regulatory Operations Staff and other government actors engaged in the unlawful activity discussed herein are personally liable under U.S.C.S.

7

§ 1983.

8

9

3.   TANNER, PUCN staff, PUCN Regulatory Operations Staff and other government actors engaged in the foregoing unlawful activities under the color of law by:

10

a.      Using state government resources, time and means to engage in such unlawful

11

activity and communications including with the use of PUCN computers, devices,

12

computer networks (including Wifi), PUCN offices and conference rooms, vehicles,

13

titles, associations, and other resources; and/or,

14

b.      Permitting TANNER to use the Handle to improperly discuss the Switch

15

704B Docket publicly and engage in *ex parte* communications regarding the Switch 704B

16

Docket with Defendants and with the Chairman of the PUCN's full knowledge and

17

permission, as claimed by TANNER. See **Exhibit 12.1 and Exhibit 12.3**.

18

4.  TANNER, PUCN staff, PUCN Regulatory Operations Staff and other government

19

actors knew or should have known that their failure to implement certain policies and

20

procedures preventing *ex parte* communications, and instead, allowing their General Counsel

21

(TANNER), the head individual tasked with preventing such unlawful activity, would result

22

in miscarriage of justice and deprive Switch of its constitutional rights.

23

5.  As a result of the Defendants' unlawful actions, Switch expended over $1,000,000.00

24

to pursue its 704B application to obtain 100% renewable energy in a biased and partial

25

process (the Switch 704B Docket), suffered monetary damages in excess of $30,000,000.00,

26

has been required to pay NVE increased costs for renewable energy and has been deprived of

27

its statutory and constitutional rights, including Switch's rights to access interstate commerce

28

and is entitled to punitive and/or exemplary damages as this Court sees fit, including under

NRS § 42.005.

6.   It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

## FOURTEENTH CAUSE OF ACTION

### (Request for Declaratory Relief)

1.   Plaintiff Switch incorporates the allegations in the preceding paragraphs as if herein.

2.   An actual and justiciable controversy now exists between Switch and Defendants regarding the rights of the respective parties.

3.   Switch requests a declaration that Switch's NRS 704B Docket was unlawfully handled and the Denial Order was issued in a manner expressly prohibited by NRS 703.373 because the Denial Order was:

> a.   issued in clear violation of constitutional and statutory provisions;
>
> b.   in excess of the statutory authority of the PUCN;
>
> c.   made upon unlawful procedure;
>
> d.   affected by other error of law;
>
> e.   clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
>
> f.   arbitrary and capricious or characterized by an abuse of discretion.

4.   It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, Plaintiff Switch prays the Court grant the following relief:

a) A preliminary and permanent injunction ordering preservation of all data on social media platforms Defendants have ever used so that Switch might use the Order to preserve all evidence related to this action, including all documents, comments, messages, posts, images, recordings, images, videos and related materials associated with such use.

b) A preliminary and temporary injunction directing TANNER to immediately sign into Twitter, reactive her Twitter account, and also to preserve all evidence on Facebook, Pinterest, Instagram, and SoundCloud, as well as any other social media outlets which are or have been utilized by TANNER, including but not limited to all posts by TANNER and/or under the Handle (@DixieRaeSparx, #DixieRaeSparx or DixieRaeSparx);

c) A preliminary and temporary injunction directing Twitter, Facebook, Pinterest, Instagram, and SoundCloud, as well as any other social media outlets which are or have been utilized by TANNER, to preserve all posts by TANNER and/or under the Handle (@DixieRaeSparx, #DixieRaeSparx or DixieRaeSparx);

d) A preliminary and permanent injunction prohibiting Defendants, and their respective officers, agents, servants, lobbyists, employees and/or all persons acting in concert or participation with them, or any of them, from: (1) destroying any evidenced related to Switch, the Switch 704B Docket, the First Solar Contracts, the Denial Order or the other 704B Entities (including, but not limited to, information on websites, such as social media websites, cell phones, devices, emails, text messages, instant messages, or communications on any electronic device or platform, regardless of their personal or public nature);

e) An Order directing all Defendants to preserve, retain, and deliver to Switch in electronic copy:

    a. All evidence, including documentation, communications, notes and other evidence regardless of form, related to TANNER and/or the Handle in any way;

    b. All evidence, including documentation, communications, notes and other evidence regardless of form, related to in any way to Switch and/or the Switch 704B Docket;

    c. All evidence and documentation relating to the names and addresses (including electronic mail addresses, social media accounts, blogs, or other electronic platforms, handles, pseudonyms or otherwise) of any person to whom the Defendants have communicated regarding Switch, the Switch 704B Docket, or the 704B Entities;

    d. All financial evidence and documentation relating to Defendants' use of in house and outside lobbyists, including governmental and/or regulatory affairs personnel;

f) For at least $30,000,000.00 in monetary damages, as well as costs and attorneys' fees incurred by Switch in the Switch 704B Docket which exceed $1,000,000.00;

g) For an Order finding the Denial Order and the Settlement Agreement *void ab initio*;

h) For an Order permitting Switch to unbundle from NVE;

i) For damages reimbursing and compensating Switch for overpaying NVE as the injected middleman for the First Solar Contracts.

j) For an Order permitting assignment of the First Solar Contracts to Switch and all other 704B Entities who have unbundled from the electric utility;

k) Alternatively, for an Order from this Court setting aside the Denial Order and the Settlement Agreement under NRS 703.374 and permitting Switch to unbundle from NVE without further administrative review;

permitted to pursue its procedural rights; finding the Settlement Agreement *void ab initio;* and permitting Switch to pursue all associated remedies and rights including further administrative review with a new and unbiased PUCN, PUCN and Regulatory Operations Staff.

m) Award Switch costs, disbursements, and attorney's fees incurred by Switch in bringing this action.

n) Award statutory, compensatory, consequential, statutory, punitive (including but not limited to under Nev. Rev. Stat. § 42.005), and treble damages to Switch in an amount to be determined at trial or by declaratory relief;

o) Award of interest, costs and attorneys' fees, including in-house attorneys' fees, incurred by Switch in prosecuting this action; and

p) For all other relief as this Court deems just and equitable.

DATED this 12th day of July, 2016.

SWITCH, LTD.

SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
7135 S. Decatur Blvd.
Las Vegas, Nevada, 89118
702-333-6566
*Attorney for Plaintiff*

## CERTIFICATE OF MAILING

I certify that I am an employee of Switch, Ltd., and that on the __ day of ____, 201_, I deposited for mailing at Las Vegas, Nevada a true copy of the foregoing **Complaint** in the above matter, as addressed as follows:

*Attorney for Defendant*


_____
Employee of SWITCH, LTD.