SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
SWITCH, LTD.
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118
*Attorney for Plaintiff*
*702-333-6566*
*sam@switch.com*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD. a Nevada limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>The PUBLIC UTILITIES COMMISSION OF NEVADA, a Nevada Administrative Agency; The REGULATORY OPERATIONS STAFF OF THE PUBLIC UTILITY COMMISSION OF NEVADA a department within the PUCN; NEVADA POWER d/b/a NV Energy a Nevada Public Utility and Monopoly; ANTHONY SANCHEZ, Esq., an individual; ELIZABETH ELLIOT, ESQ., an individual; and CAROLYN "LINA" TANNER, ESQ., an individual; DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | Case No.: 2:16-cv-01629<br><br>**EMERGENCY ORDER FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

This Court having reviewed and considered Plaintiff Switch, Ltd.'s Emergency, *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Motion"), the supporting Memorandum of Points and Authorities and exhibits, the record in this case, and for other good cause shown:

**THE COURT HEREBY FINDS THAT:**

1. Carolyn "Lina" Tanner, Esq. ("Defendant TANNER") served as General Counsel for the Defendant, the Public Utilities Commission of Nevada ("PUCN") where she served in that capacity for over three (3) years, and her duties included ensuring the propriety and legality of

1. PUCN activities and proceedings until she promptly resigned on June 16, 2016; one day following complaint at a public PUCN hearing which exposed Defendant TANNER's veiled use of social media to discuss dockets pending before the PUCN.

2. Plaintiff Switch discovered TANNER's activities a few days after June 16, 2016; when TANNER's activity was exposed by a Nevada lobbyist, Fred Voltz.

3. Plaintiff became aware that TANNER had used the false name "DixieRaeSparx", "#DixieRaeSparx" or "@DixieRaeSparx" (each referred to herein as the "Handle" or the "Twitter Account" when referencing the Handle on Twitter.com) to publicly discuss Plaintiff's request to unbundle from the electric utility monopoly Defendant Nevada Power Company and other PUCN proceedings during the pendency of that request.

4. Defendant PUCN has yet to provide Plaintiff with documents in response to Plaintiff's Nevada Open Records Act (NRS 239.0107).

5. TANNER also maintained a blog (www.dixiereasparx.com) with the assistance of WordPress.com, and other social media accounts using variations of the Handle on Twitter, Pinterest, Etsy, LinkedIn, SoundCloud, Instagram, and other platforms.

6. TANNER communicated with other government officials via social media including during government hearings.

7. TANNER has since deactivated and has attempted to permanently delete, destroy or hide her social media accounts and social media activity.

8. TANNER's public postings about Plaintiff are documents that Defendant PUCN must turn over as part of Plaintiff's NRS 239.0107 Open Records Request.

9. Twitter's deactivation policy is such that unless a request for Twitter records to be preserved is made by the individual, law enforcement such as the AG's office conducting a criminal investigation, or a court, all records of a deactivated account will be permanently deleted as early as thirty (30) days from deactivation. Twitter's policy also states that a user who has attempted to deactivate an account, can enter into an arrangement with Twitter regarding its destruction or reactivate an account simply by logging into the account within the thirty (30) day post deactivation window.

10. TANNER deactivated her Twitter account, attempting to destroy evidence and putting the evidence at jeopardy shortly after her actions were exposed on June 15, 2016. The record of TANNER's Twitter account is at imminent risk of permanent destruction if not enjoined.

11. Defendant TANNER has already taken steps to destroy the evidence at issue. Plaintiff seeks an emergency *ex parte* temporary restraining order to avoid irreparable injury because of the imminent and immediate risk of permanent destruction of data and relevant evidence on TANNER's social media accounts and activities if not immediately enjoined as time is of the essence.

12. As Plaintiff's Motion is simply an effort to unwind TANNER's attempts to destroy relevant evidence and documents, it is unnecessary to provide TANNER with advance notice of Plaintiff's emergency *ex parte* request to simply preserve evidence and ensure that Defendant TANNER cannot take any further actions to destroy relevant evidence at issue. Plaintiff's *ex parte* order will merely prevent TANNER and other Defendants from further deleting any other social media accounts or evidence or taking additional steps to make retrieval of the evidence she has attempted to delete more difficult.

13. Plaintiff Switch will suffer permanent and irreparable harm and injury absent a temporary restraining order which orders Defendant TANNER to reactivate her Twitter account immediately and which enjoins Defendant TANNER and all other Defendants from further destroying any other evidence relevant to the issues raised in the complaint, including any other social media accounts she may have used.

14. Plaintiff Switch will suffer permanent and irreparable harm and injury absent an order from this Court which orders Defendant TANNER's third party social media account providers, including Twitter.com, to preserve and make public any of her social media accounts and prevent them from being deleted or transferred absent an order from this Court. Absent this Order, Plaintiff will be deprived of the ability to recover tweets and other social media activity including likes, shares, direct messages, private messages, instant messages or other evidence of TANNER's unlawful activity online.

15. Plaintiff Switch has demonstrated that it is likely to succeed on the merits of its claims regarding NRS 239 which largely requires Defendant to preserve and maintain evidence and

public records, including TANNER's public postings about Plaintiff.

16.     The balance of the equities tips demonstrably in favor of Plaintiff Switch because issuance of the restraining order and injunction would merely preserve the status quo, including preserving all relevant evidence in this case, pending trial, and failure to issue the restraining order and injunction will result in relevant evidence and public records being forever destroyed and lost if Defendant TANNER is not enjoined from continuing to destroy evidence and not ordered to take minimal steps in order to preserve evidence that is at *imminent* risk of being destroyed absent this restraining order and if Defendant TANNER's third party social media account providers such as Twitter.com and WordPress.com, which have evidence of Defendant TANNER's public postings are not ordered to preserve such evidence and prevent such evidence from being lost or destroyed.

17.     Not only is there is no likelihood of harm to the public from the issuance of the temporary restraining order now being granted, such an order furthers the public interest in enjoining activities that are likely to destroy evidence relevant to the affairs of a public utility.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     Plaintiff's request for Temporary Restraining Order is hereby GRANTED.

2.     Defendants shall cease all destruction of any evidence of or associated with social media accounts used by Defendant TANNER; specifically, TANNER's social media accounts using the name "@DixieRaeSparx", "#DixieRaeSparx", or "DixieRaeSparx" (the "Handle" or the "Twitter Account" when referencing the Handle on Twitter.com) and TANNER's blog posts on a WordPress blog maintained by TANNER on www.DixieRaeSparx.com (the "Blog").

3.     Defendants and all persons or entities in active concert, participation, or privity with any of them TANNER,

shall immediately cease all destruction of any evidence of or associated with any social media accounts used by Defendant TANNER.

4.     Defendant TANNER shall sign into and reactivate her Twitter Account and the Blog *immediately*, **but no later than 11:59 PM ET, on July 18, 2016,** to ensure the evidence of conduct previously posted on the same is not deleted per any deactivation or destruction policy.

5.     Defendant TANNER will reactivate and take all measures to reactivate and

1  preserve for discovery all data previously posted on the webpage DixieRaeSparx.com, including hard-
2  drive and archived copies *immediately*, **but no later than 11:59 PM ET, on July 18, 2016**.

3        6.     Plaintiff shall post a nominal bond of one hundred dollars ($100) because the
4  evidence indicates that Defendant will suffer only minimal, if any, damage by the issuance of this
5  temporary restraining order.

### ORDER SETTING HEARING FOR PRELIMINARY INJUNCTION

7        1.     The Court hereby sets the hearing for Plaintiff's Emergency Ex Parte Motion for
8  Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Motion") on
9  July 28, 2016, at 11:00 a.m. in Courtroom 6A at the Lloyd D. George United
10 States Federal Courthouse, 333 Las Vegas Boulevard South, Las Vegas, Nevada 89101.

11       2.     Further, the Court hereby sets the following briefing schedule related to Plaintiff's
12 Motion:

      a.     Defendants, or each of them, shall file and serve opposition papers, if any, no later than July 21, 2016; and

      b.     Plaintiff shall file and serve its reply brief, if any, no later than July 25, 2016.

17       3.     In addition, to ensure Defendants receive timely notice of the hearing, Plaintiff may, in addition to the requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure, serve the Motion, this Order and all other pleadings filed to date on Defendants by electronic mail transmission.

IT IS SO ORDERED July 18, 2016, at 2:15 p.m.

_____
The Honorable James C. Mahan
United States District Court Judge

SAMUEL CASTOR, ESQ.
SWITCH, LTD.
6795 Decatur Blvd.
Las Vegas, NV 89118
Telephone: (702) 333-6566