James J. Pisanelli, Esq., Bar No. 4027
JJP@pisanellibice.com
Todd L. Bice, Esq., Bar No. 4534
TLB@pisanellibice.com
Ava M. Schaefer, Bar No. 12698
AMS@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, NV  89101
Telephone:  702.214.2100

Samuel Castor, Esq., Bar No. 11532
SWITCH, LTD.
7135 South Decatur Boulevard
Las Vegas, Nevada  89118

*Attorneys for Plaintiff Switch, Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>                          Plaintiff,<br><br>vs.<br><br>NEVADA POWER d/b/a NV ENERGY; CAROLYN "LINA" TANNER, in her individual capacity; ALAINA BURTENSHAW, in her official capacity; DAVID NOBLE, in his official capacity; PAUL THOMSEN, in his official capacity; and DOES 1 THROUGH 10; ROE ENTITIES 11 THROUGH 20, inclusive,<br><br>                          Defendants. | CASE NO.:    2:16-cv-01629-JCM-CWH<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff Switch, Ltd. ("Switch"), by and through its undersigned counsel, hereby alleges as follows:

**NATURE OF THE ACTION**

Switch brings this action to expose and untangle the unlawful scheme between NV Energy and certain actors within the governmental agency charged with regulating NV Energy's activities and protecting consumers, the Public Utilities Commission of Nevada ("PUCN").  NV Energy has schemed to unlawfully deprive consumers, including Plaintiff Switch, Ltd. ("Switch"), of access

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1

to renewable and innovative electrical power in Nevada. NV Energy has also deprived Switch of the right to unbundle from electric service in pursuit of renewable and alternative energy sources. NV Energy's anti-competitive activities and attempts to undermine renewable energy innovation, resources and access are well documented in Nevada. NV Energy colluded with regulators, including PUCN Commissioners – and the PUCN's now-dismissed general counsel – to prevent Switch from pursuing its right of petition and procure a temporary resolution with Switch that is the product of that unlawful scheme. Switch seeks declaratory relief, injunctive relief, damages, attorneys' fees, costs, and a judicial decree emancipating Switch from the unlawful hold the defendants have obtained over Switch to block Switch's attempts to develop and encourage innovative and affordable renewable energy.

### JURISDICTION

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, as Switch asserts federal claims.

2.      This Court has supplemental jurisdiction for Switch's state law claims under 28 U.S.C. § 1367(a).

3.      This Court has personal jurisdiction over the defendants as: (a) the defendants are residents of or carry on their activities in Nevada; and (b) the defendants committed the activities giving rise to Switch's claims in the State of Nevada.

4.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Switch's claims occurred in this District. This suit also concerns NV Energy's anticompetitive efforts to retain Switch as a client and preserve and strengthen NV Energy's monopoly over the market for retail electricity in the State of Nevada and the PUCN's conspiratorial efforts to thwart competition in the retail market.

### PARTIES

5.      Plaintiff Switch is a Nevada limited liability company organized and existing under the laws of the State of Nevada and doing business worldwide.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

6.     Switch is widely known as the world's leading designer, builder and operator of the award winning SUPERNAP data center facilities, designed to sustainably power, cool and protect the physical infrastructure and networks necessary to run the Internet.

7.     Switch is informed and believes that Defendant Nevada Power Company (d/b/a NV Energy) ("NV Energy") was and is a Nevada corporation doing business in Clark County, Nevada.   NV Energy is a public utility that is allegedly regulated by the Public Utilities Commission of Nevada.

8.     Switch is informed and believes that Defendant Alaina Burtenshaw ("Burtenshaw") was, and is, a Nevada resident, and at all times relevant to this action was a commissioner with the PUCN.   Burtenshaw was the PUCN Chairman overseeing the Switch 704B Docket and is named herein in her official capacity.

9.     Switch is informed and beliefs that Defendant David Noble ("Noble") was, and is, a Nevada resident, and at all times relevant to this action was a commissioner with the PUCN and is named herein in his official capacity.

10.     Switch is informed and believes that Defendant Paul Thomsen ("Thomsen") was, and is, a Nevada resident, and on October 1, 2015 replaced Burtenshaw as Chairman of the PUCN and is named herein in his official capacity.

11.     Thomsen presided as Chairman over PUCN Dockets (15-11025, 15-11027, 15-11028, and 15-11029) wherein NV Energy furthered the deception and fraud perpetuated in the initial Switch 704B Docket.

12.     Switch is informed and believes that Defendant Carolyn Tanner ("Tanner") was, and is, a Nevada resident, and served as general counsel for the PUCN for over three years, until her June 16, 2016 prompt resignation when her misconduct came to light.   In that role, Tanner's duties obligated her to oversee the propriety and legality of PUCN activities and proceedings.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

# ALLEGATIONS COMMON TO ALL COUNTS

### I.   *Switch Submits its Application to Unbundle From the Electric Monopoly*

13.   The PUCN is the administrative agency of the State of Nevada governed by NRS Chapter 703, among other statutes, rules, and regulations, tasked with, *inter alia*, regulating electric utilities in the State of Nevada.

14.   The Regulatory Operations Staff of the PUCN ("PUCN Staff") is a department within the PUCN tasked with, among other things, participating before the PUCN as a separate party in cases before the Commission.

15.   NV Energy is the principal supplier of electric power in the State of Nevada. NV Energy operates as a monopoly in those locations where it provides power because state law had effectively precluded competitors from servicing customers in NV Energy's territory, unless an exemption exists.

16.   Pursuant to federal law and FERC regulation, NV Energy is required to maintain independent groups or teams that are supposed to function independent from each other, including the marketing, retail and transmission teams.  These independence rules including those embodied in 18 CFR 35.39 were implemented to ensure monopolies like NV Energy did not abuse their market power or violate federal law.

17.   In 2001, the Nevada Legislature sought to expand competition and loosen NV Energy's monopoly position by enacting NRS Chapter 704B which allows those customers annually consuming over one (1) megawatt of power to unbundle from the electric monopoly in the State of Nevada.  In other words, the Nevada Legislature enacted laws to increase competition and thereby increase available electrical resources.  By enacting NRS Chapter 704B, the Nevada Legislature expressly eliminated NV Energy's authority to preclude competition for consumers of more than one (1) megawatt of power.

18.   One of the first consumers to take advantage of this unbundling was Barrick Gold U.S. Inc., which filed its Chapter 704B application in 2003.  Barrick's unbundling was approved by the PUCN.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

19.     Beginning in 2011, Switch sought on several occasions to initiate discussions with NV Energy concerning renewable energy options.  Switch's directly reached out to NV Energy on several occasions.  Despite Switch's attempts, NV Energy ignored and brushed aside Switch's requests, apparently convinced that its monopoly position somehow entitled it to ignore the interests of its consumers; consistent with the principal flaws of monopoly operations which lead to higher prices, inferior customer service and lack of innovation.

20.     Due to Barrick's successful unbundling under Chapter 704B, Switch began exploring alternative and innovative 100% renewable energy options, including access to interstate commerce, under NRS Chapter 704B.

21.     On November 7, 2014, Switch filed its NRS 704B application with the PUCN (the "Switch 704B Docket").[1]  Switch sought to unbundle in order to obtain 100% renewable power for its data center facilities.

22.     Rebecca Wagner ("Wagner"), together with Burtenshaw, and Noble, oversaw the Switch 704B Docket, with Burtenshaw serving as the Chairman and presiding Commissioner.[2]

23.     While the Switch 704B Docket was pending, Switch made multiple public statements - including within the Switch 704B Docket - that it intended to unbundle from the electric utility NV Energy because of NV Energy's lack of interest in providing Switch with 100% renewable power.

24.     At that time, Switch also began negotiating with several renewable energy providers – including nationally recognized photovoltaic solar provider First Solar Electric, LLC, (aka First Solar, Inc.) – to build a new solar facility in Nevada.  Switch planned to secure the energy assets necessary to ensure that when its application to unbundle from NV Energy was granted, it could be 100% green via renewable power contracts with First Solar (the "First Solar Contracts") and other providers.  Because of this process, NV Energy knew of Switch's relationship with First Solar.

---

[1]     PUCN Docket No. 14-11007.
[2]     Wagner was replaced by Thomsen, effective October 1, 2015.  Wagner is no longer a ccommissioner with the PUCN.

25.     Given the mission critical nature of Switch's services, and the need to ensure utmost security of Switch's physical infrastructure, Switch, NV Energy, and the PUCN Staff entered various protective agreements.

## II.   NV Energy's and Elizabeth Elliot's Early Alarming Acts

26.     On or around October 6, 2014, Switch met with PUCN Staff and representatives from NV Energy, including Elizabeth Elliot, associate general counsel for NV Energy ("Elliot"). The purpose of the meeting was to discuss Switch's 704B Application.

27.     The specific energy needs (aka load) of a NRS 704B applicant are disclosed during the NRS Chapter 704B application and hearing process.   This load information is highly confidential.  Accordingly, Switch demanded protection of this and other confidential information including with whom Switch was negotiating. This data, if disclosed, could compromise the integrity of Switch's physical security and operations, and impair the procedural due process of the 704B Application.  As a mission critical service provider, such details were acknowledged as confidential.

28.     In violation of the protective agreements, non-disclosure agreements, a protective order and written and oral instructions from Switch, Elliot obtained access to the Network Interconnect Transmission Service ("NITS") application Switch submitted to the PUCN.  Elliot admitted to reviewing Switch's NITS application, against Switch's express instructions and FERC rules. The NITS application contained Switch's electrical load and other confidential information that only the transmission side of NV Energy was authorized to access, review or use. Switch believes and alleges that Elliot and NV Energy misused this information in furtherance of the scheme to keep Switch from unbundling from NV Energy's service.  In doing so, Switch believes that Elliot violated FERC rules including 18 CFR 35.39.[3]

---

[3]     Switch has removed Elliot as a named Defendant – without prejudice – to allow NV Energy to conduct the investigation it represented it would conduct at the outset of the Switch 704B Docket following Elliot's improper conduct.  Switch reserves the right to bring suit against Elliot and any other NV Energy personnel.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

29.     NV Energy indicated it would conduct an investigation and then subsequently agreed to replace Elliot with a new attorney to sit as first chair in the Switch 704B Docket. *Id*.

30.     Despite insisting it would conduct an investigation, NV Energy has yet to share the results of any such investigation.  Moreover, Elliot was present at the Switch 704B hearings and engaged in strategy and dialogue with NV Energy counsel, experts and witnesses throughout the hearings, passing notes, engaging in intense conversation and leading strategy dialogue in the background.  As such, despite Switch's concerns, and the alleged investigation and solution, Elliot remained integrally involved in the Switch Dockets and Switch never learned of the results of the NV Energy investigation.

31.     Moreover, given Elliot's veiled involvement in the Switch Dockets, it became clear to Switch that Elliot was not prevented from sharing the information she obtained from Switch's NITS application with the attorneys leading NV Energy's efforts to prevent Switch from unbundling.

32.     Switch believes and alleges that the data gleaned from Switch's NITS application contributed to NV Energy to insist upon an "exit fee" several million dollars higher than even that suggested by the PUCN Staff, and is one of the many variables that led the PUCN to outright deny Switch's 704B Application.

### III.  The PUCN Denies Switch's Application

33.     Switch was not the only large electric consumer seeking to participate competitively in the marketplace as authorized by the Nevada Legislature.  On or around May 8, 2015, well after the Switch 704B Docket was already underway, Las Vegas Sands Corp. and Wynn Las Vegas, LLC filed their own Chapter 704B applications to unbundle from NV Energy.[4]

34.     Days later, on May 12, 2015, MGM Resorts International filed its own Chapter 704B application to unbundle from NV Energy.

---

[4]     The press also took note of these 704B applications.  For example, in June of 2015, the Las Vegas Sun published a cartoon depicting Switch and others hanging from a wall in chains, unable to escape; "NV Energy" is scrawled on an open prison cell door.

35.     With some of the State's largest electric customers seeking to interject competition, NV Energy faced significant economic consequences should such competition be allowed.  Seeking to suppress this competition, NV Energy then turned to the PUCN, which had become largely a captive of the very utility that it was supposed to be regulating.  Indeed, significant controversy has surrounded the PUCN's activities such that all three of the Commissioners that sat over Switch's 704B Application have been or are being replaced.

36.     Pursuant to Nevada law, the PUCN noted it had only until June 12, 2015 (150 days from the Supplemented Application) in which to resolve Switch's Chapter 704B application.  If it did not do so, then the application was to be deemed approved as a matter of law.

37.     In the face of growing fears of competition, NV Energy, the PUCN, and PUCN Staff colluded and agreed to contrive an "exit fee" so as to discourage or preclude large customers from unbundling and interjecting competition against NV Energy.  Reinforcing the collusion, PUCN and PUCN Staff delegated the duty of calculating the invented "exit fee" to NV Energy.

38.     When Switch sought the right to evaluate the "exit fee" calculation and perform its own calculations, the PUCN refused.

39.     On or about June 11, 2015, (**one (1) day** before the 150 day procedural deadline) the PUCN issued an order (the "Denial Order") declaring that Switch was not permitted to unbundle because, *inter alia*, "[a]t a minimum, Switch's departure must be followed by a Switch-like customer" to hold other NV Energy customers harmless.[5]  This too is a concept manufactured for the first time relative to Switch.

40.     On information and belief, NV Energy's inappropriate "exit fee" was in furtherance of the Denial Order issued by the PUCN.

41.     In fact, the PUCN, with NV Energy's involvement, claimed that it was incapable of sufficiently calculating any such fee and thus it denied Switch's right to unbundle.  The PUCN and NV Energy first colluded to extend the deadline and then colluded to deny Switch's

---

[5]     PUCN Order Docket No. 14-11007 ¶ 105.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

application by June 11, 2015, because the next day, the application could not be extended further and would be deemed granted as a matter of law.

42.     Wagner, one of the three PUCN Commissioners, dissented from the Denial Order, recognizing that Switch should have the right to unbundle like other customers.  Specifically, Wagner stated that the Denial Order was "***inherently unfair***" and "***fundamentally unfair*** for all … [but especially for Switch to] ***not have some kind of outcome***"; and further that the PUCN's Denial Order was "***changing the rules midstream*** . . . ."[6]

43.     In light of the unprecedented denial and the lack of plausible explanation, Switch sent the PUCN, the PUCN Staff, and NV Energy, among other entities, litigation hold letters on June 12, 2015.

44.     Tanner responded to Switch's letter on behalf of the PUCN on June 22, 2015, denying any additional obligation to preserve evidence.

45.     Switch did not recognize the significance of this until after the clandestine activities of DixieRaeSparx were revealed.

46.     Switch thereafter filed a Petition for Reconsideration on June 25, 2015, seeking review of the Denial Order and outlining the unlawful and inappropriate substantive and procedural steps taken and conclusions reached by the PUCN in the Switch 704B Docket and Denial Order.  Such a petition is a necessary prerequisite to a legal challenge to the Denial Order.

47.     Switch had no way of knowing at that time the true impetus for what Commissioner Wagner noted as unprecedented action.  But the PUCN, its staff, and NV Energy would not want the process to become the subject of judicial action which would now be Switch's right.  Thus, NV Energy, just as the PUCN encouraged, stepped in and capitalized on the Denial Order and thereby evaded future scrutiny and competition.

---

[6]     This audio recording is publicly available on the PUCN website.  Switch can provide the parties with an audio recording of the Switch 704B Docket Hearing during which the PUCN issued the Denial Order.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

#### *IV. NV Energy Attempts to Allegedly "Help" Switch*

48.     Almost on cue, the day after Switch sought reconsideration, NV Energy approached Switch.  NV Energy pretended that it was "amazed" by the PUCN's Denial Order.

49.     To convince Switch to forego its rights to pursue unbundling and further judicial relief, NV Energy would have to deceive Switch and conceal the true nature of its activities in securing the Denial Order.  It did disclose material information to Switch that it knew was necessary to make its representations truthful – NV Energy was not amazed by the Denial Order, it knew about Tanner and her clandestine activities to protect NV Energy from competition and defeat Switch's application.  The scheme all along was to procure a denial of Switch's application and then use that to leverage a resolution by telling Switch that the only way it could obtain renewable energy would be to stay with NV Energy and provide it a piece of the First Solar Contracts.  This would have the added benefit of enriching NV Energy and further discouraging other competition from entering the marketplace.

50.     Based upon the representations of NV Energy and the PUCN – neither of which disclosed the true activities of the PUCN Staff and those of Tanner to subvert Switch's 704B application – and under continued pressure from NV Energy that Switch would miss the rapidly closing federal investment tax credit window necessary for the First Solar Contracts – Switch was given no choice but to sign a stipulation with NV Energy and the PUCN on July 30, 2015 (the "First Stipulation") whereby NV Energy, without incurring any direct costs or sacrificing any consideration, reaped premiums from Switch for the First Solar Contracts – the very contracts Switch pursued and negotiated.

51.     The First Stipulation incorporated four agreements: (1) a stipulation signed by Switch, NV Energy, and the PUCN Staff; (2) an Agreement for Electric Service under Rate Schedule OLGS-3P-HLF between NV Energy and Switch; (3) a Renewable Energy Agreement between NV Energy and Switch; and (4) a Power Purchase Agreement between NV Energy and Playa Solar 2, LLC.[7]

---

[7]     The First Stipulation also includes an advice letter from NV Energy modifying the commitment period in the HLF tariff from five years to three years.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

52.     The unlawfully-induced First Stipulation provided Switch with the renewable energy credits from the First Solar Contracts, but at a higher cost and with NV Energy as an injected middle party.  The PUCN and NV Energy required Switch to pay a Nevada Green Rider "premium" above its then current electric rates to obtain the renewable benefit of the First Solar Contracts.  The First Solar Contracts procured by Switch and then hijacked by NV Energy – with the PUCN's assistance – were praised as the would-be lowest priced photo-voltaic solar solution in the United States, if not the world for the year 2015; and offered renewable energy well below Switch's then current costs with NV Energy.

53.     However, it was NV Energy, not Switch that reaped the benefits of the First Solar Contracts, just as NV Energy and the PUCN planned.  Switch was required to pay the ransom premium *above* their normal retail rate to NV Energy to claim association with the First Solar Contracts.  Accordingly, while NV Energy only paid First Solar ~3.8 cents per kilowatt-hour, NV Energy charged Switch more than double that price, at ~9 cents per kilowatt-hour.

54.     In reasonable reliance on NV Energy's fraudulent representations about the PUCN, the 704B process, material omissions regarding NV Energy's involvement with Tanner and leverage over the PUCN staff and Commissioners, Switch signed the First Stipulation with NV Energy and the PUCN on July 10, 2015.  Switch had no other way to obtain 100% renewable power, or execute on the First Solar Contracts.  Switch also agreed to stay its Petition for Reconsideration.  The First Stipulation was intended to resolve all issues in Docket No. 14-11007.

55.     Pursuant thereto, Switch executed a Second Stipulation with NV Energy on November 30, 2015, under the Nevada Green Rider, to finalize the full development of the Switch Station solar facilities with First Solar by adding another 79 megawatts of nameplate power (the "Second Stipulation") (together with the First Stipulation, the "Switch Agreements").  This Second Stipulation is likewise the product of a lack of disclosure by NV Energy and the PUCN.

56.     It is based upon the improperly-procured Denial Order and the lack of disclosed facts – facts which were required to be disclosed to Switch, including the clandestine involvement of PUCN's own general counsel to advance the interest of NV Energy against that of Switch – that resulted in the Switch Agreements between Switch, NV Energy and the PUCN.  That First

Stipulation was procured by the concealment of material facts so as to deprive Switch of any ability to further challenge the Denial Order, as well as to enrich NV Energy.  **In short, Switch would not have signed the First Stipulation if anyone had revealed the activities of the Defendants, most notably of Tanner.**

57.    Unlike it had done with Switch's application, the PUCN apparently recognized that it could not just "deny" the applications of leading gaming companies – Sands, Wynn, and MGM – of the right to unbundle and utilize interstate direct access for their energy needs. Instead, the PUCN – again in conjunction with NV Energy – invented new costs and on or about January 13, 2016, the PUCN granted those applications for unbundling, including without being replaced by like customers, but sought to discourage such unbundling by the imposition of manufactured and unlawful exit fees and new non-bypassable tariffs.

58.    On information and belief, since January 2016, the hotel properties known as the Peppermill, El Dorado, and the Grand Sierra operating in Northern Nevada have all expressed intent to unbundle from NV Energy under NRS Chapter 704B.

59.    To date, Switch is the *only* entity the PUCN has expressly denied the ability to unbundle under NRS Chapter 704B.

### V. Tanner's Campaign for NV Energy Comes to Light

60.    On or around June 15, 2016, Switch learned of Tanner's clandestine campaign against its 704B application through deceptive and unethical activities/communications using the pseudonym "DixieRaeSparx", "#DixieRaeSparx" or "@DixieRaeSparx" (each referred to herein as the "Handle") to discuss the Switch 704B Docket and other pending PUCN proceedings.

61.    Tanner has since admitted to intentionally deleting the contents of these social media accounts thereby creating a presumption that this evidence was adverse and in support of Switch's claims.

62.    On information and belief, Tanner also maintained a blog (www.dixiereasparx.com) on WordPress.  Tanner also maintained accounts using variations of the Handle on Twitter, Pinterest, Etsy, SoundCloud, Instagram, and other platforms.

63.    Again, Tanner has deleted or hidden the contents of these accounts.

64.     On information and belief, Tanner made public comments about pending PUCN matters, including the Switch 704B Docket, utilizing the Handle as commentary to online publications such as VegasInc.

65.     Tanner deleted the comments, tweets, postings and the contents of Tanner's blog after Tanner resigned from her position as general counsel to the PUCN.  Upon information and belief, Tanner's resignation was due to her handle being exposed on June 15, 2016 and her resignation the next day.

66.     On information and belief, Tanner also maintains a public Facebook account under her proper name, "Carolyn 'Lina' Tanner."

67.     Anthony Sanchez ("Sanchez"), current senior vice president of government and community strategy for NV Energy, **and former assistant general counsel for the PUCN**, is "friends" with Tanner on Facebook.

68.     Sanchez is the second highest paid employee at NV Energy behind NV Energy's CEO.

69.     On information and belief Sanchez is personal friends with Tanner.

70.     On information and belief Sanchez is social media friends with Tanner.

71.     On information and belief Sanchez communicated with Tanner via social media.

72.     On information and belief, Sanchez actively used his legislative contacts to oppose Switch's 704B Docket and prevent Switch from obtaining access to innovative and affordable renewable energy via NRS 704B.

73.     Judy Stokey ("Stokey") is the current vice president of government and community relations for NV Energy.  On information and belief, and according to Tanner's cell phone records, Stokey communicated with Tanner only one time in 2014 and 2015.  That communication was just **days before** Switch's 704B Docket hearing.

74.     On information and belief, NV Energy has secured and maintained office space in the same office buildings as the PUCN's southern and northern offices, for at least the past five (5) years.

75. This proximity facilitates ex parte communications to advance the interests of NV Energy over its captive regulators, the PUCN – and flies in the face of ethical separations.

76. Tanner has associated herself with the Handle via social media. However, the full depth and breadth of Tanner's social media activity is unknown because she intentionally deleted or made private her entries, once she was exposed which prompted her dismissal as general counsel.

77. Despite Tanner's attempts to conceal her improper campaign, Switch has thus far uncovered evidence in the "snippets" captured or cached by Google's search engine, available when searching "DixieRaeSparx Switch" that Tanner discussed Switch and the Switch 704B Docket under her Handle.

78. Tanner publicly evidenced a bias against solar energy by defending the PUCN and NV Energy through social media and the "comments" section of online news websites using the Handle. Tanner did so even while Switch's application was still pending.

79. On information and belief, Tanner knowingly and wrongfully attempted to influence, and did influence, the regulatory system through her improper, unethical and illegal activities in support of NV Energy.

80. As a representative of the Commission during the Switch 704B Docket, PUCN policy and Nevada open meeting laws otherwise prohibited Tanner from commenting directly with the PUCN Regulatory Operations Staff about Switch's 704B Docket, which functions as an independent party in cases before the Commission.

81. Tanner knowingly circumvented those restrictions.

82. Following her resignation, Tanner not only admitted to using the Handle, she also admitted that the PUCN knew of her actions and that at least one PUCN chairman followed her on Twitter.

83. On discovering Tanner's improper activities, Switch served another round of litigation hold letters on June 24, 2016.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

84.     And, Switch submitted Nevada Open Records Act requests pursuant to NRS 239.010 to the PUCN on June 28, 2016 and July 1, 2016; demanding information related to this activity.  The PUCN has failed to fully comply with Switch's requests.

85.     As outlined herein, the activities of Tanner, the PUCN Commissioners, the PUCN Staff, and NV Energy constitute improper collusion and a conspiracy to (1) deny Switch's request to unbundle and interject competition and additional electrical resources into the marketplace of large consumers, (2) coerce and deceive Switch to enter into the First Stipulation and Second Stipulation and forego its right to petition for redress and (3) allow NV Energy to enter extremely beneficial renewable energy contracts with third parties and then charge Switch a premium for access to this renewable energy.

86.     The First Stipulation and Second Stipulations are the product of this unlawful scheme, fraud, and collusion and are *void ab initio*.

### FIRST CAUSE OF ACTION
### Antitrust Violations
*(Against Defendant NV Energy)*

87.     Switch repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

88.     15 U.S.C. § 1 makes illegal every "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among several states, or with foreign nations".

89.     15 U.S.C. § 2 specifies that it is illegal and a violation of the antitrust laws of the United States to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states."

90.     NRS 598A.060(1)(e) further provides that it is unlawful in the State of Nevada to engage in any activity attempting "to monopolize or otherwise combining or conspiring to monopolize trade or commerce in the State."

91.     As set forth in the allegations of this Complaint, NV Energy employed deception, trickery and deceit to restrict competition for large energy consumers and attempted to illegitimately extend its monopoly over Switch through such means.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

92.     The purpose and intent of NV Energy's actions was to restrict competition and advance its monopoly interests.  And, it succeeded in advancing those improper ends through its illegitimate means.

93.     Switch suffered a causal antitrust injury as a result of NV Energy's scheme: Switch entered into the First Stipulation which incorporates (1) a stipulation signed by Switch, NV Energy, and the PUCN Staff; (2) an Agreement for Electric Service under Rate Schedule OLGS-3P-HLF between NV Energy and Switch; (3) a Renewable Energy Agreement between NV Energy and Switch; and (4) a Power Purchase Agreement between NV Energy and Playa Solar 2, LLC; and shortly thereafter, Switch entered into the Second Stipulation.

94.     Switch also withdrew its Petition for Reconsideration in the Switch 704B Docket based on the First Stipulation and Second Stipulation.

95.     Switch would never have entered into the First Stipulation and Second Stipulation had it been told the truth by NV Energy or the PUCN regarding the behind the scenes illegal conduct, ex parte communications and conspiracies undertaken to advance NV Energy's interest and deprive Switch of its rights to unbundle.

96.     As a result, Switch has suffered monetary damages in an amount to be determined at trial but in excess of $50,000,000.00, has been required to pay NV Energy increased costs for renewable energy, and has been prevented from directly contracting with an electric provider other than NV Energy.

97.     Switch further seeks treble damages as permitted by law so as to discourage others from engaging in such improper conduct.

98.     It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

**SECOND CAUSE OF ACTION**
**Breach of Contract**
*(Against Defendant NV Energy)*

99.     Switch repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

100.    Switch and NV Energy via Elliot had an agreement regarding her non-access to the NITS Application.

101.    Switch and NV entered into Non-Disclosure Agreements prior to the 704B Process.

102.    Additionally, Switch and NV Energy entered a protective agreement during the course of the Switch 704B Docket on June 13, 2014 (the "Protective Agreement").

103.    NV Energy breached these agreements by reviewing Switch's NITS application and sharing that information in violation of the same.

104.    NV Energy's breach of the agreements has damaged Switch in an amount to be determined at trial.

105.    It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

## THIRD CAUSE OF ACTION
### Failure to Comply with NRS 239
*(Against Defendants Tanner, Burtenshaw, Noble, and Thomsen)*

106.    Switch repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

107.    Pursuant to NRS 239.0107, a governmental entity must respond to a written or oral request to inspect, copy, or receive a copy of public records within five (5) business days of receipt of the request, or respond to the request by explaining why the entity is unable to meaningfully respond to the request within five (5) business days of the request.

108.    Switch served PUCN with written requests for records pursuant to NRS 239.010 on June 28, 2016 and July 1, 2016.

109.    More than five (5) business days passed since Switch served PUCN with the NRS 239.010 requests.

110.    PUCN has not fully responded to Switch's requests.

111.    Tanner, also violated NRS 239.300 and 239.320 when she destroyed, concealed, erased, obliterated and falsified records appertaining to her office.

112.   Tanner was a public officer of the PUCN and an officer of the Court because:

a.   Tanner sought and obtained the permission of the PUCN to assume the alter ego of DixieRaeSparx;

b.   Tanner commented about official PUCN matters as DixieRaeSparx;

c.   The PUCN, via at least one of its commissioners, knew of Tanner's activity; and

d.   The Chairman of the PUCN followed DixieRaeSparx on social media.

113.   As a result, all communications generated by DixieRaeSparx are public documents subject to the protection of NRS Chapter 239.   Tanner's and/or other defendants' destruction of these records constitute an unlawful attempt to destroy and actual destruction of evidence.

114.   Switch seeks the Court's assistance to ensure that Switch obtains all relevant records, particularly communications between the Commission and parties, and any documents or postings created by Tanner.

115.   Tanner – at least twice – successfully deactivated her Twitter account to destroy evidence after her unlawful acts were exposed on June 15, 2016.

116.   Twitter's deactivation policy is such that unless a request for Twitter records was made by law enforcement or a court, all records of a deactivated account will be permanently deleted at least thirty (30) days from deactivation (here around June 15, 2016).   Twitter's policy also states that a user who has attempted to deactivate an account, can reactivate an account simply by logging into the account within the thirty (30) day post-deactivation window.

117.   Therefore, as requested below, Switch sought and obtained preliminary injunctive relief in the form of an order requiring Tanner to immediately log into and reactivate her account to preserve evidence and so that Tanner can provide Switch with a complete copy of these materials.

118.   Tanner has already attempted to and has successfully destroyed evidence.

119.   Despite having notice of this Court granting a Temporary Restraining Order days before the Twitter account would be permanently destroyed, Tanner refused to act thereby knowingly destroying the evidence.

120. Switch has already been harmed, and the likelihood of immediate harm is demonstrably high. Absent injunctive relief, additional material evidence *will* be destroyed, further complicating this matter allowing Tanner to further destroy evidence of unlawful conduct.

121. It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

**FOURTH CAUSE OF ACTION**
**Violation of Switch's Right to Equal Protection**
**under the Fourteenth Amendment – 42 U.S.C. § 1983**
*(Against Defendants Burtenshaw, Noble, Thomsen, and Tanner)*

122. Switch repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

123. The Fourteenth Amendment of the United States Constitution ensures equal protection to all United States citizens.

124. Switch has a constitutional right to equal protection when appearing before a Nevada Administrative Agency such as the PUCN.

125. NRS Chapter 704B is a statute in full force and effect in Nevada.

126. NRS Chapter 704B provides electric utility customers who meet certain requirements the ability to unbundle from the public electric utility and access the national market. These customers must submit an application for approval with the PUCN.

127. **To date, four (4) other entities have been authorized by the PUCN to unbundle from NV Energy; three (3) in the last five (5) months. Switch is the <u>only</u> entity to be denied the right to unbundle after completing a contested case before the PUCN.**

128. The PUCN, through commissioners Burtenshaw, Noble, and Thomsen[8], and other government actors yet to be named, violated Switch's constitutional and statutory right to equal protection as guaranteed by the Fourteenth Amendment by intentionally singling out Switch as the only NRS Chapter 704B applicant to be denied the ability to unbundle, while permitting other

---

[8] Although Thomsen was not a commissioner at the time, he is named herein in his official capacity because he filled the vacancy left by Wagner.

19

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

NRS Chapter 704B applicants to unbundle; (*i.e.* Barrick Gold U.S. Inc., Las Vegas Sands Corp., Wynn Las Vegas, LLC, and MGM Resorts International (collectively the "704B Entities")).

129.    Switch was in all material qualification respects similarly situated to these other applicants.

130.    The PUCN, via its commissioners, under the color of state law, intentionally treated Switch differently than the 704B Entities without a legal basis to do so; as highlighted by Commissioner Wagner during the Switch 704B Docket hearing.

131.    As a result of the defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue it's the Switch 704B Docket to obtain 100% renewable energy in a biased and partial process, suffered monetary damages in an amount to be determined at trial but in excess of $50,000,000.00, and has been required to pay NV Energy increased costs for renewable energy.

132.    It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

**FIFTH CAUSE OF ACTION**
**Violation of Switch's Fourteenth Amendment Due Process Rights - 42 U.S.C. § 1983**
*(Against Defendants Tanner, Burtenshaw, Noble, and Thomsen)*

133.    Switch repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

134.    NRS Chapter 704B provides utility customers who meet certain requirements the ability to unbundle from the public utility and access the national market.

135.    Switch has a property interest in unbundling from the public utility and accessing the national market.

136.    Defendants improperly engaged in *ex parte* communications prohibited by NRS § 703.301(2) during the pendency of the Switch 704B Docket, including via Tanner's Handle.

137.    The PUCN, via its commissioners, violated Switch's constitutional and statutory right to due process in the Switch 704B Docket by permitting Tanner to use the Handle to

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

publicly discuss the Switch 704B Docket during the pendency of the same.  Tanner publicly admitted that a PUCN Chairman knew of her activities, endorsed them and followed her social media activity.

138.    Tanner, the PUCN, via its commissioners, and other government actors, knew or should have known that their failure to implement certain policies and procedures would result in a miscarriage of justice and deprive Switch of its constitutional and statutory rights and protections.

139.    Yet, Tanner, the PUCN, via its commissioners, acting under color of state law, denied Switch adequate protections and violated Switch's right to due process.

140.    As a result of the defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process, suffered monetary damages in excess of $50,000,000.00, and has been required to pay NV Energy increased costs for renewable energy.

141.    Switch requests that the Court order the PUCN, via its commissioners, to consider Switch's application to unbundle, within the factual scenario existing on November 7, 2014, anew, affording Switch the process it was previously improperly denied and avoiding the damage inherit in the delay caused by the PUCN commissioner's unlawful actions.

142.    It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

### SIXTH CAUSE OF ACTION
### Intentional Interference with Prospective Economic Advantage
*(Against NV Energy)*

143.    Switch repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

144.    While the Switch 704B Docket was pending, Switch engaged in negotiations with First Solar for the First Solar Contracts.

145.    In conjunction with Switch's application to unbundle and the associated Switch 704B Docket, Switch disclosed its prospective relationship with First Solar to NV Energy.

146. Armed with this information, on information and belief, NV Energy began negotiating with First Solar.

147. NV Energy intended to harm Switch by preventing the direct contractual relationship between Switch and First Solar. NV Energy proceeded to negotiate directly with First Solar for the renewable energy Switch desired, and then, once the PUCN issued the Denial Order, presented Switch with an offer for the desired renewable energy at a hefty premium and represented that PUCN would neither grant Switch's Petition for Reconsideration nor subsequent NRS Chapter 704B applications.

148. Additionally, NV Energy's interference with Switch's prospective economic advantage includes the interference with cloud scale potential customer opportunities due to the overpriced cost of energy.

149. As a direct and proximate result of NV Energy's conduct, Switch has expended over $1,000,000.00 to obtain renewable energy in a biased and partial process (the Switch 704B Docket), suffered, and will continue to suffer, irreparable injury and monetary damages in excess of $50,000,000.00, been required to pay NV Energy increased costs for renewable energy, lost profits and material economic advantage, and has been deprived of its statutory and constitutional rights.

150. It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

## SEVENTH CAUSE OF ACTION
### Deceptive Trade Practices Under NRS § 598.0915
*(Against Defendant NV Energy)*

151. Switch repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

152. NV Energy identified costs, taxes, and statutory and regulatory requirements necessary for Switch to purchase energy from NV Energy.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

22

153.   NV Energy threatened that unless it acted as a middle man and Switch paid it a premium for the renewable energy facilities, Switch would be unable to timely obtain 100% renewable energy.

154.   However, shortly after NV Energy made these representations, the PUCN granted *multiple* NRS Chapter 704B applications.

155.   NV Energy's conduct as outlined in this Complaint constitutes a deceptive trade practice under Nevada law.

156.   NV Energy knew its representations were false, and that it concealed material information in its negotiations to exact a series of agreements with Switch and First Solar, endorsed by the PUCN, that are very profitable for NV Energy.

157.   Switch justifiably relied on NV Energy's conduct and representation and entered into the First Stipulation, which incorporates (1) a stipulation signed by Switch, NV Energy, and the PUCN Staff; (2) an Agreement for Electric Service under Rate Schedule OLGS-3P-HLF between NV Energy and Switch; (3) a Renewable Energy Agreement between NV Energy and Switch; and (4) a Power Purchase Agreement between NV Energy and Playa Solar 2, LLC; and shortly thereafter, entered into the Second Stipulation.

158.   As the direct and proximate result of NV Energy's deceptive conduct, Switch suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.  Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process (the Switch 704B Docket), suffered monetary damages in excess of $50,000,000.00, and has been required to pay NV Energy increased costs for renewable energy.

159.   Due to the rapidly expiring investment tax credit window, Switch had no choice but withdraw its Petition for Reconsideration in the Switch 704B Docket.

160.   The intentional misrepresentations by NV Energy were committed under circumstances constituting oppression, malice, and/or fraud.  Switch is therefore entitled to punitive damages in an amount to be decided by the Court.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

161.   It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

### EIGHTH CAUSE OF ACTION
### Fraud in the Inducement
*(Against Defendant NV Energy)*

162.   Switch repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

163.   As set forth in this Complaint, the First Stipulation and the Second Stipulation and associated agreements are the product of fraud and collusion by NV Energy and the PUCN.

164.   Pursuant to its express terms, nothing in the First Stipulation and Second Stipulation is severable.  The First Stipulation and Second Stipulation as a whole are void *ab initio* due to the deception and misconduct by NV Energy and PUCN in their procurement.

165.   Switch would not have entered into the First Stipulation and Second Stipulation had it not been deceived and had NV Energy and PUCN told it the truth about the activities leading up to the denial of its Chapter 704B application and the clandestine campaign waged by PUCN's own general counsel to defeat Switch's application and advance the interest of NV Energy.

166.   Switch reasonably relied to its detriment upon the conduct and representations of NV Energy and the PUCN including that the parties had "wholly explored the issues raised by Switch's application through discovery."  Both NV Energy and the PUCN knew this to be untrue. They both knew of the undisclosed illegitimate and unethical activities that had been concealed from Switch.

167.   As a result of NV Energy's fraudulent inducement, Switch has suffered monetary damages in excess of $50,000,000.00 and has been required to pay NV Energy increased costs for renewable energy.

168.   The fraudulent inducement by NV Energy was committed under circumstances constituting oppression, malice, and/or fraud.  Switch is therefore entitled to punitive damages in an amount to be determined at trial.

169.  Due to NV Energy's misconduct and misrepresentations used to induce Switch to enter into the Switch Agreements, the Court should declare the Switch Agreements unenforceable and *void ab initio*.

170.  It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

### NINTH CAUSE OF ACTION
**(Civil Conspiracy to Improperly Influence the Switch 704B Docket and Commit Fraud)**
*(Against all Defendants)*

171.  Switch repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

172.  Tanner, the PUCN, via its commissioners, and NV Energy agreed either explicitly or tacitly to act in concert to unlawfully influence the Switch 704B Docket for the purpose of harming Switch and benefiting NV Energy.

173.  Defendants did so by using Tanner's Handle to: (1) influence the Switch 704B Docket; (2) engage in *ex parte* communications concerning the Switch 704B Docket; and (3) negatively affect public opinion for their personal benefit.  Defendants' common goal was to keep Switch as a bundled customer of NV Energy and to prevent Switch from accessing the interstate market and the extremely beneficial First Solar Contracts.  Tanner along with the PUCN's commissioners further engaged in this conduct in order to curry favor with NV Energy and preserve their positions (and pensions) at the PUCN.

174.  Defendants further agreed, either explicitly or tacitly, to act in concert to improperly induce Switch to execute the documents comprising the First Stipulation and Second Stipulation, including: (1) a stipulation to resolve all issues in the Switch 704B Docket; (2) an agreement for electric service under rate schedule OLGS-3P-HLF; (3) a renewable energy agreement; and (4) a power purchase agreement, thereby foregoing its procedural rights and remedies in conjunction with the Switch 704B Docket.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

175.   Since Switch was committed to 100% renewable energy but its application to unbundle was denied, NV Energy executed the First Solar Contracts, thereby taking advantage of some of the most economical renewable energy in the United States, if not the world.  NV Energy now charges Switch a premium for the same power Switch would have otherwise obtained if it had been permitted to unbundle and contract directly with First Solar.

176.   Defendants knew that injury to Switch was likely because their actions would, among other things, (1) force Switch into withdrawing its Petition for Reconsideration, and (2) deprive Switch of its rights, remedies and economic advantages associated with unbundling, *i.e.*, direct access to the interstate energy market and direct access to the favorable First Solar Contracts.

177.   As a result of Defendants' unlawful actions, Switch expended over $1,000,000.00 to pursue its 704B application to obtain 100% renewable energy in a biased and partial process, suffered monetary damages in excess of $50,000,000.00, has been required to pay NV Energy increased costs for renewable energy and has been deprived of its statutory and constitutional rights, including Switch's rights to access interstate commerce.

178.   Due to Defendants' misconduct and misrepresentations used to induce Switch to enter into the First Stipulation and the Second Stipulation, the Court should declare the Switch Agreements unenforceable and *void ab initio*.

179.   Defendants' actions were committed under circumstances constituting oppression, malice, and/or fraud.  Switch is therefore entitled to punitive and/or exemplary damages in an amount to be decided by the Court.

180.   It has been necessary to retain the services of counsel to prosecute this action and Switch is therefore entitled to damages, attorneys' fees, including in-house attorneys' fees, and costs related to the same.

**WHEREFORE**, Switch prays for judgment as follows:

1.   A preliminary injunction ordering preservation of all evidence including all data created on social media platforms used by the Defendants or their employees so that Switch might

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

use the Order to preserve all evidence related to this action, including all documents, comments, messages, posts, images, recordings, videos and related materials associated with such use.

2.     A continued preliminary and temporary injunction directing Tanner to immediately sign into Twitter, reactive her Twitter account, and also to preserve all evidence on Facebook, Pinterest, Instagram, and SoundCloud, as well as any other social media outlets which are or have been utilized by Tanner, including but not limited to all posts by Tanner and/or under the Handle (@DixieRaeSparx, #DixieRaeSparx or DixieRaeSparx);

3.     A preliminary and temporary injunction directing Twitter, Facebook, Pinterest, Instagram, and SoundCloud, as well as any other social media outlets which are or have been utilized by Tanner, to preserve all posts by Tanner and/or under the Handle (@DixieRaeSparx, #DixieRaeSparx or DixieRaeSparx);

4.     A preliminary injunction prohibiting the defendants, and their respective officers, agents, servants, lobbyists, employees and/or all persons acting in concert or participation with them, or any of them, from: (1) destroying any evidenced related to Switch, the Switch 704B Docket, the First Solar Contracts, the Denial Order or the other 704B Entities (including, but not limited to, information on websites, such as social media websites, cell phones, devices, emails, text messages, instant messages, or communications on any electronic device or platform, regardless of their personal or public nature);

5.     For compensatory and special damages, including attorneys' fees (in conjunction with this litigation and those incurred in furtherance of the Switch 704B Docket), against the defendants in an amount to be determined at trial;

6.     For an Order finding the Denial Order and the First Stipulation and Second Stipulation and related agreements *void ab initio*;

7.     For an Order permitting Switch to unbundle from NV Energy;

8.     For damages reimbursing and compensating Switch for overpaying NV Energy as the injected middleman for the First Solar Contracts;

9.     For treble damages for NV Energy's violation of the Sherman Act and its Nevada counterpart;

10.     For an Order permitting assignment of the First Solar Contracts to Switch and all other 704B Entities who have unbundled from the electric utility;

11.     Alternatively, for an Order from this Court setting aside the Denial Order and the First Stipulation under NRS 703.374 and permitting Switch to unbundle from NV Energy without further administrative review;

12.     Alternatively, for an Order from this Court finding Switch was induced into waiving its otherwise available administrative remedies, denied due process and permitted to pursue its procedural rights; finding the First Stipulation *void ab initio*; and ordering the PUCN, via its commissioners, to consider Switch's application to unbundle, as submitted on November 7, 2014, anew, under the facts of the time, affording Switch the process it was improperly denied;

13.     Alternatively, for rescission of the First Stipulation and Second Stipulation;

14.     For punitive damages in an amount to be determined at trial;

15.     Award of reasonable costs and attorneys' fees;

16.     Prejudgment and post-judgment interest on the foregoing sums at the highest rate permitted by law; and

17.     For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all matters so triable.

DATED this 30th day of September, 2016.

PISANELLI BICE PLLC

By:    /s/ Todd L. Bice
       James J. Pisanelli, Esq., Bar No. 4027
       Todd L. Bice, Esq., Bar No. 4534
       Ava M. Schaefer, Esq., Bar No. 12698
       400 South 7th Street, Suite 300
       Las Vegas, Nevada  89101

       and

       Samuel Castor, Esq., Bar No. 11532
       SWITCH, LTD.
       7135 South Decatur Boulevard
       Las Vegas, Nevada  89118

*Attorneys for Plaintiff Switch, Ltd.*

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of PISANELLI BICE PLLC, and that on this 30th day of September 2016, I caused to be **electronically served through the Court's filing system** true and correct copies of the foregoing **FIRST AMENDED COMPLAINT AND JURY DEMAND** to the following:

Nicholas J Santoro, Esq.
Oliver J. Pancheri, Esq.
Santoro Whitmire
10100 W. Charelston Blvd., Suite 250
Las Vegas, NV 89135
*Attorneys for Nevada Power dba NV Energy*

Robert R. McCoy, Esq.
Kaempfer Crowell
1980 Festival Plaza Drive, Suite 650
Las Vegas, NV 89135
rmccoy@kcnvlaw.com
*Attorneys for Anthony Sanchez*

Matthew S. Fox, Esq.
Public Utilities Commission of Nevada
9075 West Diablo Drive
Suite 250
Las Vegas, NV 89148
msfox@puc.nv.gov
and
Hayley A. Williamson, Esq.
Public Utilities Commission of Nevada
1150 E. William street
Carson City, NV 89701
hwilliamson@puc.nv.gov
*Attorneys for Public Utilities Commission of Nevada*

Carolyn E Tanner
P.O. Box 18287
Reno, NV 89511
linatanner@sbcglobal.net
and
Kent R. Robison, Esq.
Robison, Belaustegui, Sharp & Low
71 Washington Street
Reno, NV 89503
krobison@rbslattys.com
and
Therese Shanks, Esq.
Robison Belaustegui Sharp & Low
71 Washington Street
Reno, NV 89503
tshanks@rbsllaw.com
*Attorneys for Carolyn "Lina" Tanner*

Marla J Hudgens, Esq.
Lewis Roca Rothgerber LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
mhudgens@lrrlaw.com
*Attorneys for Elizabeth Elliot*

_/s/ Shannon Thomas_
An employee of PISANELLI BICE PLLC